[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12646
Non-Argument Calendar

_____

D.C. Docket No. 03-00213-CR-BBM-1-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROSA MARTINES-CHAVES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 29, 2005)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Rosa Martines-Chaves appeals her conviction and 151-month sentence

imposed following her guilty plea to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). On appeal, Martines-Chaves argues: (1) that the district court erred in accepting her guilty plea because it was not supported by an adequate factual basis; (2) that the district court erred in denying her motion to withdraw her guilty plea; and (3) that her sentence should be vacated because it was based upon a drug quantity in excess of what she admitted, in violation of Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531(2004).[1] After review, we affirm.

## I. BACKGROUND

**A.     First Plea Colloquy**

In a written plea agreement, Martines-Chaves pled guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine. The plea agreement stated that Martines-Chaves was "pleading guilty because she is in fact guilty of the crime charged in Count One of the Indictment." Further, the plea agreement contained a sentence-appeal waiver that excluded only upward departures, as follows:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted
> by federal law, the defendant voluntarily and expressly waives the

---

[1]After briefing in this case, the Supreme Court decided United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), which extended Blakely's holding to the United States Sentencing Guidelines. Thus, Martines-Chaves's Blakely argument is now a Booker argument.

2

right to appeal her sentence and the right to collaterally attack her sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of her sentence.

During the plea colloquy, the district court advised Martines-Chaves of the rights she waived by pleading guilty. Martines-Chaves then stated that she did not know if she wanted to plead guilty. The district court responded that if she did not want to plead guilty, she would get a trial. Martines-Chaves then stated that she wanted to plead guilty.

After Martines-Chaves signed the plea agreement, the district court asked her if anyone had promised her anything that was not contained in the agreement. Martines-Chaves acknowledged that no other promises had been made. She further acknowledged that no one had threatened or forced her into pleading guilty.

The government then gave the factual basis for the plea. According to the government, on March 9, 2003, an Arkansas State Police trooper stopped co-defendant Manual Perez for a traffic violation on an interstate near Russellville, Arkansas. After giving Perez a warning, the trooper asked Perez if he could search the vehicle. Perez consented, and the trooper found approximately 12 kilograms of a substance containing methamphetamine in a backpack in the car. The trooper

then arrested Perez and took him to the county sheriff's department.

Upon questioning, Perez told police that he was hired to transport the drugs for Oscar Cardona, another co-defendant in this case. Members of the Arkansas State Police and the DEA then recorded a series of conversations between Cardona and Perez. During the conversations, Cardona instructed Perez to drive to Atlanta with the drugs. An unidentified male also said that he could have "the female pick up the meth."

On March 11, 2003, Cardona and Perez met at a gas station. Defendant Martines-Chaves arrived with Cardona in a Lincoln Navigator. Cardona told Perez to wait at a nearby Waffle House restaurant while he drove Perez's car to a house to secure the drugs.

Agents then observed Cardona leave the gas station and defendant Martines-Chaves follow in the Navigator. At an intersection, Cardona and Martines-Chaves had a conversation, after which Cardona traveled in one direction and Martines-Chaves traveled in another. Agents followed Cardona to a residence where he was arrested. He stated that he worked for Martines-Chaves, that he had picked up two loads of methamphetamine for her in the past, and that she had rented that residence where he was arrested to store the drugs. At the drug-storage residence, agents found empty kilogram wrappers, drug residue, a chemical known for

4

manufacturing methamphetamine, and approximately $10,000 in cash. On Cardona's person, agents found keys to the drug-storage residence and to defendant Martines-Chaves's residence.

After the government's recitation, the district court asked defendant Martines-Chaves if the government's description of her involvement was correct. Martines-Chaves responded that "[t]here are some things which are true, some things which are very true, and there are some things which are not true." The district court then asked Martines-Chaves if she had entered into an agreement to distribute methamphetamine. Martines-Chaves indicated that she had not. The district court then ended the plea colloquy and set the case for trial.

## B.      Second Plea Colloquy

On August 7, 2003, defendant Martines-Chaves appeared again before the district court to enter a guilty plea. The district court gave Martines-Chaves all of the advisements required under Rule 11. For example, the district court affirmed that Martines-Chaves had sufficient access to an interpreter in order to communicate with her lawyer, that she understood her plea agreement, that she had reviewed it with her lawyer, and that she was satisfied with the representation of her lawyers. The district court also affirmed that no one had forced Martines-Chaves to plead guilty and that no one had promised her anything other than what

5

was in the plea agreement.

The government provided the same factual basis as the previous plea colloquy, adding a couple of facts. The government stated that Cardona told the arresting agents that on the morning of March 11, 2003, Martines-Chaves had given Cardona a key ring containing the keys to the drug-storage residence and to her residence. Further, a search of Martines-Chaves's residence yielded methamphetamine and an electronic scale. Numerous papers related to drug transactions also were found.

The district court then asked Martines-Chaves if the facts stated by the government were correct. Martines-Chaves responded that the government "described what Cardona told [the investigator], and Cardona said some things which are not true." The district court then specifically asked Martines-Chaves if she entered into an agreement with Cardona and Perez to possess methamphetamine with intent to distribute it. Martines-Chaves replied in the affirmative as follows:

> COURT: Okay. You are charged, . . . with conspiring with Mr. Cardona and Mr. Perez to possess with intent to distribute methamphetamine. Do you understand that?
>
> MARTINES-CHAVES: Yes.
>
> COURT: All right. In order to be guilty of that crime you would have had to have entered into an agreement with those gentlemen to do something unlawful.

6

|  |  |
|---|---|
|  | In this case, the unlawful act as charged is possession of methamphetamine with intent to distribute it. Did you enter into such an agreement with Mr. Cardona. |
| MARTINES-CHAVES: | Yes. Prior to, I did have some agreements with Mr. Cardona. |
| COURT: | All right. And was the agreement to take methamphetamine into his possession or your possession for further distribution? |
| MARTINES-CHAVES: | No. Because somebody supplies the stuff to him. He is sent the stuff to distribute to a number of people and one of the persons that often distribute[s] the drugs was me. |
| COURT: | All right. Good enough. And you knew it was methamphetamine? |
| MARTINES-CHAVES: | Yes. |

During the plea colloquy, Martines-Chaves thus admitted that methamphetamine was supplied to Cardona for distribution to a number of people and that one of those persons was Martines-Chaves. Thus, Martines-Chaves expressly admitted that she was involved with Cardona's distribution of the methamphetamine and had agreed to be part of his scheme to distribute methamphetamine. The district court found that there was a factual basis for Martines-Chaves to plead guilty to conspiracy to possess methamphetamine with intent to distribute.

The district court also specifically discussed the sentence-appeal waiver in the plea agreement, ensuring that Martines-Chaves's counsel believed the appeal waiver was in the defendant's best interest and also that Martines-Chaves understood that she was limiting her right to appeal her sentence. At the end of the

plea colloquy, the district court accepted Martines-Chaves's guilty plea and adjudged her guilty.

## C.    Presentence Investigation Report

The PSI assigned Martines-Chaves (1) a base offense level of 38, stating that she was responsible for 9.62269 kilograms of methamphetamine,[2] and (2) a two-level increase for obstruction of justice. With a total offense level of 40 and a criminal history category of I, Martines-Chaves's Guidelines range was 292-365 months' imprisonment.

## D.    Motion to Withdraw Her Plea

After the PSI was prepared, Martines-Chaves wrote a letter to the district court stating that her attorney had coerced her into pleading guilty by threatening that she would receive life imprisonment if she did not plead guilty.[3] Martines-Chaves indicated that her lawyer brought her only the last page of the plea agreement to sign, and that she did not know what the rest of the agreement stated. She also claimed that, although her attorney brought the PSI to her, neither he nor the interpreter explained it to her. Martines-Chaves alleged that a Hispanic inmate

---

[2]The indictment charged Martines-Chaves with conspiracy to possess with intent to distribute at least 500 grams of methamphetamine. The PSI recommended a drug quantity of 9.62269 based on (1) the 9.5808 kilograms found in Perez's backpack; (2) .0412 kilograms found in a bucket in Martines-Chaves's residence; and (3) .00069 kilograms also found in Martines-Chaves's residence.

[3]The letter is undated; however, the district court received it on October 10, 2003.

interpreted the PSI for her, and that the PSI contained "lies." Martines-Chaves requested to see the plea agreement and the PSI again in Spanish and requested a new attorney.

The district court construed Martines-Chaves's letter as a motion to withdraw her plea. Martines-Chaves, through new counsel, then filed a formal motion to withdraw her plea. The motion argued that there was no factual basis for her plea because, although she had admitted that she had "prior" agreements with Cardona to distribute drugs, she did not admit to conspiring with him during the March 4 through March 11, 2003 period alleged in the indictment.

During the hearing on the motion to withdraw her guilty plea,[4] Martines-Chaves testified that she did not want to sign the plea agreement, but was coerced by her former attorney. On cross-examination, Martines-Chaves acknowledged that during the August 7, 2003 plea colloquy she failed to mention that her attorney coerced her into signing the plea agreement. Martines-Chaves also stated that although she told the district court during the August 7, 2003 plea colloquy that she understood the plea agreement and had gone over it with her attorney, she actually did not understand the agreement and had not gone over all of it with her attorney. Further, Martines-Chaves stated that the plea agreement was not translated from

_____

[4]Martines-Chaves's new counsel represented her at this hearing.

English to Spanish for her prior to the August 7, 2003 plea colloquy. The district court interjected that it knew for a fact that the plea agreement had been translated into Spanish, as follows:

> I happen to know, . . . that is a falsehood. You are under oath. I know the plea agreement has been translated for you, and so for you to sit there and say under oath and say nobody has read it to you in Spanish is a falsehood and I charge you that you can be charged with perjury for sitting there and lying under oath.

At the end of the hearing, the district court stated that it believed that Martines-Chaves was not truthful with respect to her testimony, as follows:

> I feel very strongly that you have been very disrespectful of the institution of this court. We have bent over backwards to be respectful to you. We have accommodated you every time you have asked to see this court. We have hired interpreters to help you. We have permitted you to change lawyers. We have let you have two lawyers instead of one on one occasion. And every time the going gets tough, you don't exactly tell the truth, you can't remember, you don't want to answer the question. And I have very strong feelings that you are entitled to respect from me, but my feelings are equally strong that you owe respect to this proceeding and all the proceedings [in which] you've appeared, and it's my very strong feeling that you have failed to show that. I think that you have not told the truth on the stand today, and I don't think it's the first time that's happened in front of me.

In a written order, the district court denied Martines-Chaves's motion to withdraw her plea.

## E. Sentencing

As noted above, the PSI recommended an offense level of 38 based on

10

9.62269 kilograms of methamphetamine. At sentencing, the district court granted Martines-Chaves's requests for a two-level safety-valve reduction under U.S.S.G. § 2D1.1(b)(6) and a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The district court also sustained her objection to receiving a two-level increase for obstruction of justice under § 3C1.1. These reductions reduced Martines-Chaves's offense level to 34. With a total adjusted offense level of 34, and a criminal history category of I, Martines-Chaves's new guidelines range was 151-188 months' imprisonment.[5] The district court sentenced her to 151 months' imprisonment, followed by five years' supervised release. Martines-Chaves appealed.

## II. DISCUSSION

### A. Factual Basis for Guilty Plea

Martines-Chaves contends that the district court erred in accepting her guilty plea because there was an insufficient factual basis for the plea, in violation of Rule 11(f). Subsection (f) of Rule 11 provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

---

[5]As noted earlier, the PSI recommended a Guidelines range of 292-365 months' imprisonment, but the district court did not accept the obstruction-of-justice enhancement. The two reductions granted by the district court decreased the Guidelines range to 151-188 months' imprisonment.

Fed. R. Crim. P. 11(f).[6] "A district court accepting a plea must determine whether the conduct which the defendant admits constitutes the offense to which the defendant has pleaded guilty." United States v. DePace, 120 F.3d 233, 238 (11th Cir. 1997) (internal quotation marks, ellipsis, and citation omitted). "In evaluating whether a district court complied with Rule 11(f), we must determine whether the district court was presented with evidence from which it could reasonably find that the defendant was guilty." United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000) (internal brackets, internal quotation marks, and citation omitted).

"To convict a defendant for conspiracy under 21 U.S.C. § 846, the evidence must show (1) that a conspiracy existed, (2) that the defendant knew of it, and (3) that the defendant, with knowledge, voluntarily joined it." United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir. 1994) (citation omitted). "Guilt may exist even when the defendant plays only a minor role and does not know all the details of the conspiracy." Id. (citation omitted); see also United States v. Pedrick, 181 F.3d 1264, 1272 (11th Cir. 1999) ("Indeed, the evidence need not show that each defendant knew of each phase of the conspiracy, all of its details, all of the conspirators, or the participants in each event." (citation omitted)). Further, to join

_____

[6]"The purpose of Rule 11(f) is to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading." United States v. DePace, 120 F.3d 233, 238 n.8 (11th Cir. 1997) (internal quotation marks and citation omitted).

12

a conspiracy to distribute drugs, a defendant need not actually agree to sell the drugs himself. See United States v. Garcia-Torres, 280 F.3d 1, 4 (1st Cir. 2002) ("[A] drug conspiracy may involve ancillary functions (e.g., accounting, communications, strong-arm enforcement), and one who joined with drug dealers to perform one of those functions could be deemed a drug conspirator." (citation omitted)); United States v. Burgos, 94 F.3d 849, 859 (9th Cir. 1996) ("[A] variety of conduct, apart from selling narcotics, can constitute participation in a conspiracy sufficient to sustain a conviction.").

In this case, the government's factual proffer described in detail Martines-Chaves's agreement to become part of Cardona's methamphetamine distribution network. Although Martines-Chaves stated that some of the information was not true, she specifically admitted that Cardona had a drug distribution network with other people and that she had agreed with Cardona to receive drugs from him, and thus that she had entered into an agreement with Cardona to become part of his methamphetamine distribution network. The government's evidence combined with Martines-Chaves's admission is sufficient to support her guilty plea.

Further, it was reasonable for the district court not to probe further into the nature of Martines-Chaves's admitted agreement with Cardona simply based on her statement that "[p]rior to, [she] did have some agreements with Mr. Cardona."

13

During the first plea colloquy on August 1, 2003, and after the government recited all of the facts supporting the guilty plea, Martines-Chaves stated that she did not have an agreement with Cardona to distribute methamphetamine in March 2003. That is why the district court terminated the plea hearing and set the case for trial. However, at no time during the August 7, 2003 plea colloquy, even after the government recited all of the facts again, did Martines-Chaves deny an agreement with Cardona. At both plea colloquy hearings, the district court meticulously and carefully questioned Martines-Chaves regarding her guilty plea. At the August 7, 2003 plea colloquy it was reasonable for the district court not to question Martines-Chaves further after she admitted that she had received drugs from Cardona as part of his distribution network.

## B.    Withdrawal of Guilty Plea

Next, Martines-Chaves argues that the district court erred in denying her motion to withdraw her guilty plea because she had a fair and just reason for withdrawal, namely, her continued statements of innocence, which negated the intelligent and voluntary nature of her plea. She contends that the determination of whether her plea was knowing and voluntary was complicated by the fact that there was a language barrier, and asserts that the government would not be prejudiced by the withdrawal of her plea, as both co-defendants are in custody and available to

14

testify.

Under Rule 11(d)(2)(B), a defendant may withdraw a guilty plea after the court accepts it, but before sentencing, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether there is a fair and just reason for the withdrawal, the district court should evaluate "the totality of the circumstances, including: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." United States v. Cesal, 391 F.3d 1172, 1179 (11th Cir. 2004).[7]

We conclude that the district court did not abuse its discretion in denying Martines-Chaves's motion to withdraw her guilty plea. First, close assistance of counsel was available to Martines-Chaves. Martines-Chaves's attorney negotiated a favorable plea agreement on Martines-Chaves's behalf and retained an interpreter to explain the entire plea agreement to her. During the August 1, 2003 plea colloquy the district court noted that English was not Martines-Chaves's native language. However, Martines-Chaves expressly indicated that she had sufficient

_____

[7]"We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. We will only reverse a district court's denial of a motion to withdraw if it is 'arbitrary or unreasonable.'" Cesal, 391 F.3d at 1179 (internal quotation marks and citations omitted).

15

contact with her interpreter to communicate with her attorney. Further, during the August 7 plea colloquy, Martines-Chaves admitted that she was satisfied with her counsel.

Second, the record shows that Martines-Chaves's plea was knowing and voluntary. Martines-Chaves testified at both plea colloquies that no one had threatened or forced her into pleading guilty and that no promises were made outside those contained in the plea agreement. The district court also informed Martines-Chaves of the maximum and minimum penalties for her offense, so she was fully aware of the consequences of her guilty plea. The district court also explained the charge against Martines-Chaves and ensured there was a factual basis for the plea. Finally, Martines-Chaves agreed in the plea agreement that she was pleading guilty to the drug conspiracy count because she was, in fact, guilty of that count.

Third, if Martines-Chaves were allowed to withdraw her plea, judicial resources would have been wasted, not conserved. During Martines-Chaves's first plea hearing, the district court gave her several opportunities to go to trial when she began making statements that were inconsistent with her guilt. However, Martines-Chaves rejected her opportunities to go to trial. Having given Martines-Chaves numerous opportunities to go to trial, it would have been a waste of

16

judicial resources to allow her to undo her plea, to empanel a jury, and to conduct a trial in a case where she had persisted in pleading guilty. In sum, the district court did not abuse its discretion in denying Martines-Chaves's motion to withdraw her guilty plea.

## C.     **Blakely/Booker Argument**

Finally, Martines-Chaves argues that her sentence violated <u>Blakely</u> because it was based on a drug quantity neither admitted by her nor found by a jury. She asserts that a defendant cannot waive the right to appeal a sentence imposed in excess of the statutory maximum, and suggests that her sentence exceeded the "statutory maximum" as explained in <u>Blakely</u>.

This Court has held that a defendant may waive the right to raise a <u>Blakely/Booker</u> challenge to his or her sentence. <u>See</u> <u>United States v. Grinard-Henry</u>, 399 F.3d 1294, 1296 (11th Cir. 2005), <u>petition for cert. filed</u>, April 5, 2005 (No. 04-9566). Martines-Chaves's plea agreement contained a sentence-appeal waiver in which she waived the right to appeal her sentence except in the case of: (1) an upward departure from the otherwise applicable Guidelines range; or (2) a government appeal. Because Martines-Chaves's <u>Blakely/Booker</u> argument does not fall within either exception to her appeal waiver, she is precluded from raising the <u>Blakely/Booker</u> issue on appeal.

17

## III. CONCLUSION

For the foregoing reasons we affirm Martines-Chaves's drug conviction and 151-month sentence.

**AFFIRMED.**