[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**March 27, 2006**
**THOMAS K. KAHN**
**CLERK**

No. 05-12188
Non-Argument Calendar

_____

D. C. Docket Nos. 04-00054-CR-3-RV
and 04-00085-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIEN QUYET LUONG,
a.k.a. Tam Thanh Tran,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 27, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Tien Quyet Luong appeals his conviction and 136-month sentence for

multiple counts of bank fraud. The district court ensured Luong's plea was knowingly and voluntarily executed, and the court accurately calculated Luong's sentencing range under the Guidelines. Because the plea was properly executed and the sentence imposed is reasonable, we AFFIRM.

## I. BACKGROUND

Luong was separately indicted in Oregon and Florida for various charges related to bank fraud. The Oregon case was consolidated in Florida under Federal Rule of Criminal Procedure 20, and a superceding indictment was issued. Luong pled guilty at separate hearings in June, pursuant to a written agreement, and August 2004, without a written agreement. At the hearings, the court explained the trial rights that Luong was waiving by pleading guilty, and the court listened to the government's presentation and Luong's acknowledgment of the factual predicates to the charged offenses, including eleven counts of bank fraud in Oregon and seventy-three counts of bank fraud in Florida.

These plea hearings occurred in the months following the decision in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and the plea agreement and colloquies reflected the uncertainty of the time regarding the federal Sentencing Guidelines. Nonetheless, the court was clear with Luong that the

2

Guidelines were binding at the time and that no one would be able to tell him what his sentencing range would be until the presentence investigation report ("PSI") was completed and the judge weighed the evidence regarding various sentencing factors. The court observed that the sentence would depend on "any number of things, including the amount involved, the number of victims, any number of things." R3 at 37. At the plea hearing on the Oregon charges, the court told Luong that he could not withdraw his plea if the sentence imposed was more severe than he expected. R4 at 33. Luong's guilty pleas were accepted.

The cases were consolidated in Florida for sentencing. The PSI detailed the schemes used by Luong and concluded that he played a role in dealing fraudulent checks in excess of $6.8 million, including a leadership and organizing role in the offenses. Luong's attorney made a motion to withdraw his representation after Luong questioned the attorney's advice regarding the plea.

Luong subsequently filed a motion to withdraw his plea. Luong and his first attorney testified at the hearing on the motion to withdraw plea. The court denied the motion because it would prejudice the government to allow Luong to withdraw his plea and because Luong had knowingly and voluntarily entered the plea in the first place.

The sentencing hearing occurred in April 2005. At that hearing, the

3

government introduced evidence concerning the scheme employed by Luong to defraud banks, including his role in the offenses and evidence of the amount of money that Luong had defrauded from various financial institutions. Regarding the amount of money at stake, the government presented evidence of the total amount of dealt checks, $6.8 million, and the amount of actual loss, $5.8 million. The district court found Luong responsible for $2.9 million, exactly half of the actual loss amount, for purposes of the Guidelines calculation. The court also denied Luong's objection to a four level enhancement for his role in the crime and denied the government's objection to the reduction for acceptance of responsibility. Luong was convicted of multiple counts of bank fraud, in violation of 18 U.S.C. §§ 2 and 1344; one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1) and (h); and one count of conspiracy to commit bank fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 371 and sentenced to 136 months.

On appeal, Luong challenges both his conviction and sentence, including several claims not raised in the district court. Regarding his conviction, Luong argues the district court abused its discretion by not granting his motion to withdraw his plea as to some of the charges, because he did not enter it knowingly. In regard to his sentence, Luong makes three general arguments. First, he argues

that the district court should have used a clear-and-convincing standard instead of a preponderance-of-the-evidence standard for establishing the facts that gave rise to his sentence. Second, Luong claims that his rights under the Confrontation Clause were violated, because the court considered evidence summarized by the government without giving him the opportunity to confront the witnesses whose information was the basis for the summary. Third, Luong argues that the district court should have made a sua sponte downward departure, because his criminal history category was overstated. Also regarding his sentence, Luong appeals the application of several sentencing guidelines. First, he claims that the district court erred in determining his responsibility for the amount of loss, because it did not provide a critical analysis of the dollar amount. Second, Luong argues that the district court erred when it applied a two-level increase under U.S.S.G. § 2B1.1(b)(9) (2003) for the use of unauthorized access devices, because he did not qualify for the increase. Finally, Luong contends that the district court erred in applying a four-level enhancement under U.S.S.G. § 3B1.1(a) for his leadership role, because the evidence was insufficient to support it. As a final grounds for appeal, Luong argues the district court imposed an unreasonable sentence, because it incorrectly applied the factors under 18 U.S.C. § 3553(a).

## II. DISCUSSION

Luong presents us with a montage of legal arguments, several unmade in the district court, regarding his plea and subsequent sentencing.  We recognize from the outset that a "guilty plea is not a meaningless gesture to be renounced on a lark."  United States v. Cesal, 391 F.3d 1172, 1180 (11th Cir. 2004) (per curiam), vacated on other grounds, 125 S. Ct. 2553 (2005).  Nor is it "a means of testing the weight of a potential sentence."  United States v. Gonzales-Mercado, 808 F.2d 796, 801 (11th Cir. 1987) (citation omitted).  The absence, in the district court, of Luong's adscititious appellate arguments colors our consideration of those new arguments on appeal.  We proceed by addressing Luong's arguments in turn.

### A.  Withdrawal of a Guilty Plea

The denial of a motion for withdrawal of a guilty plea is reviewed for abuse of discretion.  United States v. Freixas, 332 F.3d 1314, 1316 (11th Cir. 2003).  Before a district court imposes sentence, it may permit a defendant to withdraw his plea for any "fair and just reason."  Fed. R. Crim. P. 11(d)(2)(B).  Evaluating the totality of the circumstances to determine if the defendant has showed a "fair and just reason," the district court must consider "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary;

6

(3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Freixas, 332 F.3d at 1318 (quotations omitted). In addition, a district court must ensure that the three core concerns of Rule 11 have been met: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." Id. (quotations omitted). We defer to the district court's application of these criteria and reverse "only if the district court's ultimate conclusion is arbitrary or unreasonable." Id. (quotations omitted).

In this case, the district court did not abuse its discretion in denying Luong's motion to withdraw his plea. Luong only appears to argue the second prong of the Rule 11(d)(2) test, that is, whether the plea was knowing and voluntary. The crux of Luong's argument is that he did not knowingly enter his plea because he did not understand the scope of conduct that the district court would consider, and, therefore, he did not understand the gravity of his possible sentence. However, at both plea hearings Luong was told that his relevant conduct could not be determined until the PSI was generated and that he would not be able to withdraw his plea if he received a more severe sentence than he thought he would receive. He was also informed that his maximum sentence was thirty years.

Luong had the benefit of close assistance of counsel during his plea hearing, and the government introduced evidence regarding the resources conserved and prejudice avoided by denying the motion to withdraw the plea. Because Luong knew his maximum sentence and because he knowingly entered his plea, the district court did not abuse its discretion in denying his motion to withdraw it. See Gonzales-Mercado, 808 F.2d at 801 (noting that close assistance of counsel and a knowing and voluntary plea are strong evidence in support of a district court's denial of a motion to withdraw a guilty plea).

B. Sentencing Arguments

After the Supreme Court's opinion in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), we review sentences for reasonableness with the Guidelines treated as advisory. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005). Even after Booker, however, we still require district courts to use the Guidelines to correctly calculate a sentencing range. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Thus, Booker did not alter our review of the application of the Guidelines or the applicable standards of review. Id. In this appeal, we undertake the now-familiar two-step analysis of a sentence. First, we must determine whether the district court correctly employed the Guidelines to

8

determine Luong's sentencing range, including the proper inclusion of sentencing enhancements and reductions. Second, we must review whether the overall sentence is reasonable in light of the factors in § 3553(a).

1. Whether the Court Correctly Determined the Sentencing Range

Luong argues that two general errors plagued his sentencing hearing: first, that the district court used the wrong evidentiary standard; second, that the district court violated his Confrontation Clause right at sentencing. We address these arguments in turn. We then address whether the district court should have sua sponte departed downward, as argued by Luong. Finally, we discuss Luong's challenges regarding the specific application of sections of the sentencing Guidelines to him.

Because Luong never raised a challenge in the district court to the appropriate evidentiary standard at sentencing, we review for plain error. See United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315 (11th Cir.), cert. denied, 126 S. Ct. 457 (2005).

> An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

9

Id. (quotation omitted).  In this context, "plain" means that "where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotations omitted).

In this circuit, it is well-settled law that at sentencing "a federal defendant's due process rights are satisfied by the preponderance of the evidence standard." United States v. Jackson, 57 F.3d 1012, 1019 (11th Cir. 1995) (quotation and alteration omitted); see also United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005) (affirming preponderance-of-the-evidence standard after Booker).  Because the law regarding the evidentiary standard at sentencing is clear, the district court did not err, much less plainly err, in applying a preponderance-of-the-evidence standard at sentencing.

In his second general argument, Luong argues that the district court violated his rights under the Confrontation Clause, citing Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  However, because he did not raise this concern before the district court, we review for plain error.  Chau, 426 F.3d at 1321–22.  In Crawford, the Supreme Court held that when testimonial evidence is used against a defendant, the defendant's Sixth Amendment rights under the Confrontation

10

Clause cannot be denied unless the witness was unavailable at trial and the defendant had a prior opportunity to cross-examine him. 541 U.S. at 68, 124 S. Ct. at 1374. We have, however, refused to extend Crawford to reliable hearsay admitted at sentencing. United States v. Baker, 432 F.3d 1189, 1254 (11th Cir. 2005) (observing that, because Crawford did not address sentencing, the use of reliable hearsay at sentencing was unaltered by the decision). Luong does not articulate a non-Crawford rationale for his claim that the district court violated his rights under the Confrontation Clause. Thus, the district court did not plainly err at sentencing with regard to either the evidentiary standard or Luong's Confrontation Clause rights.

Finally, Luong seems to argue that the district court should not have counted prior juvenile convictions in determining his criminal history category, however such offenses are properly included. See U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2). Luong also argues that the court should have departed downward from the criminal history category because "reliable information indicates that defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3(b)(1). It is unclear how specifically Luong made these arguments to the district court. There was an objection lodged as to the PSI, but no downward departure was requested.

11

We "generally do not review the merits of a district court's refusal to grant a downward departure." United States v. Mignott, 184 F.3d 1288, 1289 (11th Cir. 1999). "[W]e may conduct a de novo review of a defendant's claim that the district court mistakenly believed it lacked the authority to grant such a departure." Id. However, "[t]o preserve an issue at trial for later consideration by an appellate court, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice." United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986).

At sentencing, Luong never requested a downward departure based on his criminal history category. In fact, he never mentioned § 4A1.3 in the district court. As such, he never put the district court on notice that he was requesting a downward departure. See Dennis, 786 F.2d at 1042. Furthermore, even if Luong had filed a motion for a downward departure, we would not be able to review its denial, unless there was evidence that the district court erroneously thought that it lacked the authority to grant it. See Winingear, 422 F.3d at 1245. Because there is nothing in the record to suggest that the district court believed that it lacked the authority to make such a downward departure, we reject Luong's argument.

Luong also argues that the Guidelines were used improperly to determine his

12

offense level. We address these challenges in the subsequent sections.

a. Amount-of-Loss Calculation

For offenses involving counterfeit instruments, the offense level increases with the amount of loss. See U.S.S.G. § 2B1.1(b)(1). According to the application note, the loss amount is "the greater of actual loss or intended loss." Id. § 2B1.1 cmt. n.3(A). In addition, "[t]he court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to the appropriate deference." Id. § 2B1.1 cmt. n.3(C). "We review for clear error the district court's determination of amount of loss under the Guidelines." United States v. Grant, 431 F.3d 760, 762 (11th Cir. 2005).

For relevant conduct for jointly undertaken criminal activity, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . that occurred during the commission of the offense of conviction" shall be factored into the determination of the offense level. U.S.S.G. § 1B1.3(a)(1). For fraudulent activity, each defendant is liable for the reasonably foreseeable fraudulent activity of all the other codefendants involved in the fraud. See id. § 1B1.3 cmt. n.2(c)(2); see also United States v. McCrimmon, 362 F.3d

13

725, 732–33 (11th Cir. 2004) (per curiam).

The government presented testimony and exhibits that detailed the extent of the fraud that involved Luong. Because the evidence supported the conclusion that Luong was fully aware of the objectives of the conspiracy and was actively involved in expanding it, the district court did not clearly err in finding that the amount of loss exceeded $2,500,000.[1] Thus, the court correctly assessed a eighteen-level increase for the amount of loss. See U.S.S.G. § 1B1.3(c).

b. Increase for Use of an Unauthorized-Access-Device

Section 2B1.1 of the Sentencing Guidelines applies, inter alia, to offenses that involve altered or counterfeit instruments. A 2-level increase is warranted if the offense involved the production or trafficking of any unauthorized access device or counterfeit access device or the possession of five or more means of

---

[1] We agree with Luong that arbitrarily halving the proved amount of loss constitutes error. The district court said, "[$5.8 million] total loss, right. [That] . . . is a huge amount. And even if I hold Mr. Luong accountable for just half of that, he's still in the same category. So that would be my finding in this matter that Mr. Luong is held responsible for guideline calculation purposes of an amount equal to or in excess of [$2.9 million]." R7 at 44. There is no factual support in the record for an amount of loss of $2.9 million; the court limited neither the time frame nor the victims in order to arrive at some amount less than the amount shown by the government . Furthermore, there is no legal reason to prorate the amount of loss caused by Luong. For example, the presence of coconspirators is immaterial; each is responsible for the entire amount foreseeably caused by the conspiracy. See U.S.S.G. § 1B1.3 cmt. n.2(c)(2). There is support in the record for an amount of loss of $5.8 million, a number on which the court admittedly based its factual conclusion. Thus, it was legal error to divide the proven amount by two; however, because both $2.9 million and $5.8 million fall within the same specific offense characteristic increase, the error is harmless.

identification that were produced unlawfully. U.S.S.G. § 2B1.1(b)(9). Luong did not present this argument in the district court. Therefore, we review the district court's actions for plain error. See Camacho-Ibarquen, 410 F.3d at 1315.

Here, the evidence showed that Luong mailed more than five counterfeit driver's licenses to a codefendant. Therefore, the district court did not err, much less plainly err, in applying § 2B1.1(b)(9).

c. Leadership-Role Enhancement

The Sentencing Guidelines require a district court to increase a defendant's base offense level because of that defendant's role in an offense. Thus, a defendant's offense level is increased by 4 levels if he was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). "A defendant's role as an organizer or leader is a factual finding that we review for clear error to determine if the enhancement under § 3B1.1 was applied appropriately." United States v. Ramirez, 426 F.3d 1344, 1355 (11th Cir. 2005) (per curiam). A sentencing court considers the following factors to determine if this enhancement applies,

> (1) exercise of decision-making authority, (2) nature of participation
> in the commission of the offense, (3) recruitment of accomplices,
> (4) claimed right to a larger share of the fruits of the crime, (5) degree
> of participation in planning or organizing the offense, (6) nature and

15

scope of the illegal activity, and (7) degree of control and authority exercised over others.

Id. (quotations omitted).

The evidence in the record supports a finding that Luong was a leader or organizer of a large-scale check-cashing scheme involving five or more participants, that he recruited others to participate, and that he took a large portion of the profits. Therefore, the district court did not clearly err. We affirm the district court's application of § 3B1.1(a).

2. Reasonableness of Sentence Under 18 U.S.C. § 3553(a)

As explained previously, we review a sentence for reasonableness. Winingear, 422 F.3d at 1244, 1246. Our review is guided by the factors in 18 U.S.C. § 3553(a).[2] Winingear, 422 F.3d at 1244–45. The district court need not address every factor, when the district court acknowledges the defendant's arguments and the factors in § 3553(a). United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). The review for reasonableness is deferential. Id. at 788.

---

[2] Relevant factors include the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence, the kinds of sentences available, the sentencing range under the Guidelines, and the need to avoid disparity in sentences among similar defendants. See 18 U.S.C. § 3553(a).

The district court stated that, in determining the sentence, it considered the factors in § 3553(a), the Guidelines range, the goals of punishment and deterrence, and whether there were aggravating or mitigating circumstances. Because the district court acknowledged the arguments that Luong made at sentencing and addressed the § 3553(a) factors, we conclude that the district court imposed a reasonable sentence.

## III. CONCLUSION

Luong challenges his conviction for bank fraud and sentence to 136 months imprisonment. We conclude that the district court did not abuse its discretion by denying Luong's motion to withdraw his plea, that it did not err in its calculation of Luong's sentence under the Guidelines, and that Luong's sentence was reasonable. Accordingly, we **AFFIRM** Luong's conviction and sentence.