[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 23, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-15090
Non-Argument Calendar

_____

D. C. Docket No. 02-00030-CR-01-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CRAIG CESAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(November 23, 2004)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Craig Cesal appeals his conviction and sentence for being a participant in a

conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A)(vii)

and 846. He raises the following arguments: (1) the Fed. R. Crim. P. 11 plea colloquy was inadequate; (2) the district court erred in failing to grant his motion to withdraw his guilty plea; (3) the government breached the plea agreement; (4) Cesal's counsel provided ineffective assistance during a hearing on his motion to withdraw his guilty plea and at sentencing; (5) the district court improperly denied him the right to proceed pro se at sentencing; and (6) the district court erred in determining his sentence. The government contends that Cesal waived his right to appeal his sentence in the plea agreement. We affirm.

## I. Background

Cesal's arguments on appeal call for a fairly comprehensive statement of the relevant facts and procedural history.

Cesal was scheduled to go on trial with a codefendant on November 5, 2002, but the trial was delayed while Cesal's codefendant negotiated a plea agreement. The next morning, November 6, while the jury waited elsewhere, the court indulged the request of Craig Gillen, Cesal's retained counsel, for more time to negotiate a plea. After an hour or more of conversation involving Cesal, Gillen, Cesal's father, and, at Cesal's request, the government, an agreement was reached.

In the plea agreement, Cesal consented to plead guilty to one count of conspiracy to distribute marijuana, to waive his right to appeal his sentence

directly, and to cooperate with the government. The government agreed to hold Cesal accountable for only 1000 to 3000 kilograms of marijuana. The plea agreement provided that if Cesal failed to fulfill his obligations under the agreement, the district court could declare Cesal in breach, and the government could recommend an appropriate sentence.

Cesal's plea colloquy was held immediately after the deal was struck. When the court asked Cesal whether he had been threatened or coerced into pleading guilty, Cesal responded that he felt some pressure to plead because he was told that his sentence might otherwise be thirty years to life. The court said that no one wants to plead guilty to a crime and that it was Cesal's decision to make. Cesal indicated that he understood, and that he was making the decision to plead guilty on his own.

When the court asked whether any promises were made to Cesal that were not reflected in the plea agreement, Gillen interrupted Cesal's response to explain an additional term that had been handwritten into the agreement. The court then informed Cesal of his mandatory maximum sentence of life, the minimum sentence of ten years, the five year term of supervised release, and the potential to be fined up to four million dollars. Cesal indicated that he understood. The court asked whether Cesal understood the operation of the sentencing guidelines, and he said

he did. Next, the court informed Cesal that, if he pleaded guilty, the government would no longer have to prove to a jury that at least two people entered into an agreement to possess and distribute marijuana, that Cesal intentionally became a member of the conspiracy, or that the marijuana quantity was at least 1000 kilograms.

The government proffered that its evidence would establish that: (1) Cesal was part of a conspiracy to transport marijuana from Mexico through Texas into the United States; (2) Cesal arranged for drivers to transport the marijuana; (3) Cesal provided a trailer with a false ceiling to hide the marijuana; (4) one of the drivers was arrested and identified Cesal as the person to whom he was making the delivery; (5) marijuana had been delivered to Cesal's business in a Chicago suburb; and, (6) Cesal had arranged for marijuana to be delivered to purchasers in Georgia.

The court asked whether there was any reason to believe the government could not prove the facts it had proffered. Gillen responded that "although there are certainly some issues which we may have with the government about certain of the witnesses' testimony, Mr. Cesal is here to admit that he was a member of the conspiracy charged in count one." Plea Tr. at 10. Gillen asked Cesal to confirm this, and Cesal said "basically." Id. When prompted, Cesal elaborated: "I guess I don't agree with the story in its entirety, but I agree that I plead guilty." Id. The

4

court asked Cesal whether he admitted he was part of the conspiracy, and Cesal said: "Yes. I just disagree with some of the details." Id.

In response to the court's questioning, Cesal indicated that he had read the plea agreement, and that he believed he understood it. He also indicated that he understood he had given up his rights to a trial and to appeal his sentence. The court asked whether Cesal persisted in his plea of guilty, and Cesal said he did. The court found that Cesal's plea was knowing and voluntary and accepted the plea. The court then brought the jury back into the courtroom and dismissed it.

At Cesal's request, he and Gillen met with DEA Special Agent Mark Bertsch that afternoon for a two to three hour long debriefing. They agreed to a second debriefing, but that one apparently never took place because of subsequent events.

The day after Cesal's guilty plea, Cesal told Gillen that he wanted to withdraw his guilty plea. A week later, Cesal sent a letter to the court stating that: "I believe I entered into a plea agreement which does not reflect my activities." He said that he believed his plea should be withdrawn, and that he wanted the opportunity to meet with the government to "agree to an accurate plea agreement." Cesal's letter prompted the court to hold a hearing three weeks later. At that hearing, Gillen expressed a desire to withdraw as counsel due to a conflict, and the

5

court concluded that new counsel should be appointed before the plea issue was resolved. After an in camera hearing before a different district court judge, Gillen was permitted to withdraw as counsel, and Sandra Michaels was appointed to represent Cesal.

Michaels moved to withdraw Cesal's guilty plea and asked for funds to conduct a psychiatric evaluation of Cesal. The court ordered the psychiatric evaluation, which ultimately determined that Cesal was competent. Because Michaels was dissatisfied with the scope of the psychiatric report and had difficulty communicating with Cesal, she also filed a motion for a neurological examination.

At a June 6, 2003, hearing, Michaels argued that neurological testing was required to determine whether Cesal was mentally fit enough to knowingly and voluntarily plead guilty. Cesal then took the stand in support of the motion to withdraw his guilty plea. He testified that he pleaded guilty because, on November 6, 2002, Gillen stated that he "had prepared absolutely no defense," that "he had brought no witnesses" and "very little material evidence," that he "would not be able to defend [the] case," and that he had not prepared an opening statement. Hearing Tr. at 27-28.

After a recess, Gillen testified that he or his employees had conducted many meetings with Cesal about trial strategies, investigating claims, and the strength of

6

the government's evidence. He testified that he had not informed Cesal that he was unprepared to present a defense, cross-examine witnesses, or give an opening statement. Finally, Gillen testified that he had reviewed and carefully investigated the evidence and met with Cesal about the evidence. In a written order, the district court denied both of Cesal's motions.

The government interpreted Cesal's testimony at the hearing and his attempt to withdraw his plea as breaches of the plea agreement. Thus, it objected to the PSI and recommended a sentence based not on the 1000 to 3000 kilograms agreed to in the plea agreement, but on the more than 10,000 kilograms of marijuana for which Cesal was responsible, according to his statements during his debriefing. Cesal responded with a motion asking the court either to enforce the plea agreement or to allow him to withdraw his guilty plea. Also, Cesal personally sent a letter to the court requesting "to be represented Pro Se, or as Co-counsel Pro Se" because he was having difficulty communicating with his attorney and he opposed her strategy.

In a September 2003 order, the district court concluded that Cesal had failed to comply with the plea agreement. The court denied Cesal's letter motion to proceed as "co-counsel pro se" because Cesal was represented by counsel and would have a right to present arguments during his allocution. The court stated

7

that it would hear, at the sentencing hearing, any motion from Cesal to proceed pro se.

At the sentencing hearing, Michaels indicated that Cesal wished to proceed pro se. The court explained that Cesal had a right to represent himself so long as he was not acting to delay the proceedings, and the court indicated that it would require Michaels to remain to assist him. Cesal explained that he wanted to withdraw his guilty plea and proceed to trial. He admitted that he was unprepared to represent himself on sentencing issues at that time. The court noted that it considered Cesal to have acted in an obstructionist manner throughout the proceedings. The government added that it would be prejudiced if the sentencing were delayed because Special Agent Bertsch has been assigned to begin work in South Africa the next week. A short recess was taken to allow Michaels to talk to Cesal and ensure he would be prepared if he proceeded pro se that day.

After the recess, Cesal indicated that he would not be prepared to represent himself that day, and would accept Michaels' representation. Moments later, Michaels stated that Cesal again wished to proceed pro se and that he wanted to present certain information that was not available on that day. The court then asked Michaels to list the evidence and witnesses that Cesal wanted to present. The hearing turned to the substantive sentencing issues, and then, at Cesal's

8

request, the court permitted him to exercise his right of allocution before it made its factual findings. Cesal's allocution covered his concerns about his guilty plea and Michaels' representation, his arguments about various sentencing factors, and his background. The court sentenced Cesal to life imprisonment and five years' supervised release. Cesal, now represented by new counsel, has appealed.

## II. Plea Colloquy

Cesal argues that the district court's plea colloquy was inadequate. As an initial matter, the parties debate the standard of review. The government asks us to review only for plain error because Cesal failed to object to the plea proceedings as they occurred. We disagree that plain error is the proper standard here. Cesal quickly asked to withdraw his plea in a letter stating that he did not think that the plea agreement reflected his activities. This is arguably an attack on whether the district court complied with Rule 11(b)(3) by "determin[ing] that there is a factual basis for the plea." Also, Michaels later filed a motion to withdraw Cesal's plea on the grounds that it might not have been knowingly and voluntarily made. That motion is arguably an attack on whether the district court complied with Rule 11(b)(1), which outlines what the defendant must know before pleading, and Rule 11(b)(2), which requires the court to determine that the plea is voluntary. In such situations, we have reviewed on the merits and, if there is error, applied a harmless

9

error analysis. United States v. Monroe, 353 F.3d 1346, 1349 n.2 (11th Cir. 2003) ("In certain Rule 11 appeals, defendants moved in the district court to withdraw guilty pleas based on Rule 11 error, and thus, on appeal we reviewed for harmless error under Rule 11(h) . . . ." ); Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights.").

A court accepting a guilty plea must comply with Rule 11 and, in particular, address three "core concerns" underlying Rule 11: (1) that the guilty plea is voluntary; (2) that the defendant understands the nature of the charges; and (3) that the defendant understands the consequences of his guilty plea. Monroe, 353 F.3d at 1354. Here, the district court did so.

First, the court determined that the plea was voluntary. Cesal initially stated that he felt somewhat coerced into pleading by the possibility of a long term of imprisonment if he did not. We have held that "[t]he possibility of a greater punishment, without more, does not render a guilty plea involuntary." Hill v. Estelle, 653 F.2d 202, 205 (5th Cir. Aug. 10, 1981). The district court reacted to Cesal's statement by noting that no one wants to plead guilty to a crime, and emphasizing that only Cesal could decide whether to plead guilty. The court confirmed that there had been a lengthy conversation that morning regarding the plea agreement with Cesal, Gillen, and his family participating. Throughout the

10

plea colloquy the court asked Cesal whether he understood the plea agreement, his rights, what he would be waiving, and how sentencing would work, and each time Cesal said he did. At the end of the colloquy, Cesal persisted in his guilty plea.

Second, the court determined that Cesal understood the nature of the charges. The court explained the elements of the conspiracy charge to which Cesal was pleading guilty by setting out what the government would have to prove at trial if Cesal chose not to plead guilty.[1] The court then asked whether Cesal understood and he said he did. While Cesal now suggests that the district court was required to explain more fully, we have held that the extent of explanation required varies from case to case and charge to charge, and we have generally deferred to the "good judgment of the court, [and] to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence." United States v. Bell, 776 F.2d 965, 968 (11th Cir. 1985) (internal marks and citations omitted; alteration in original). Here, the explanation

---

[1] The district court explained the conspiracy charge as follows:

And what the government would have to prove to this jury beyond a reasonable doubt before you could be found guilty would be that at least two people entered into an agreement, whether formal or informal, to violate the laws, and particularly as they relate to the possession and distribution of marijuana. They must prove that you became a member of that conspiracy willfully and intentionally and with knowledge of it, and they would have to prove that the quantity of marijuana involved in the conspiracy was in – at least a thousand kilograms.

Plea Tr. at 7.

11

was adequate. Cesal's acknowledgment that he understood what the government would have to prove at trial evidences his understanding of the elements of the conspiracy charge. That Cesal disagreed about some of the details of the conspiracy is no indication that he failed to understand that he was pleading guilty to willfully participating in a conspiracy to possess and distribute marijuana.

Third, the court ensured that Cesal understood the consequences of his guilty plea. It informed him of the maximum and minimum sentences, the potential fine, its authority to determine his sentence, and his waiver of his right to trial. Cesal confirmed that he understood all of this.

Cesal's other claims of error do not change our assessment because, even assuming error occurred, those errors were harmless because they do not affect Cesal's substantial rights.

### III. Motion to Withdraw Guilty Plea

Cesal argues that the district court should have permitted him to withdraw his guilty plea because he did not have the benefit of "close" counsel, because his plea was unknowing and involuntary, and because the withdrawal of his plea would not have burdened the judiciary.

We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. United States v. Freixas, 332 F.3d 1314, 1318 (11th Cir.

12

2003). We will only reverse a district court's denial of a motion to withdraw if it is "arbitrary and unreasonable." Id. (citation and internal marks omitted).

A defendant may withdraw a guilty plea before a sentence is imposed if he shows a "fair and just reason" for the withdrawal. Fed. R. Crim. P. 11(d)(2)(B) (2003). A pre-sentence motion to withdraw is to be liberally construed, but there is no absolute right to have a guilty plea withdrawn. United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988). To determine whether the defendant has given a fair and just reason for withdrawal, the district court examines the totality of the circumstances, including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Freixas, 332 F.3d at 1318 (internal marks and citations omitted). We have also considered the defendant's admission of factual guilt at the Rule 11 hearing and the timing of the motion to withdraw. United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

As to close assistance of counsel, we defer to the district court's credibility determination that it was Gillen, not Cesal, who testified honestly about Gillen's trial preparations. See United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003) ("[W]e allot substantial deference to the factfinder, in this case, the district

13

court, in reaching credibility determinations with respect to witness testimony.") (internal marks and citation omitted). We also accept the district court's statement, in its order denying the motion to withdraw the plea, that "the court observed Mr. Gillen actively engaging with Mr. Cesal and his family as the defendant struggled to decide whether to accept the plea." Order at 13 (June 15, 2003).

As to the next factor, we have already rejected Cesal's argument that his plea was not knowing and voluntary. The district court did not abuse its discretion in reaching the same conclusion. In the portion of its order dealing with the burden on judicial resources if Cesal were permitted to withdraw his plea, the court explained: "If the court thought that Mr. Cesal was unaware of the consequences of his actions when he entered the plea, or thought he was unduly pressured into entering the plea, or even thought that he hastily entered the plea without considering the possibilities, it would grant his motion and set his case for trial. To the contrary, although the actual plea negotiations were conducted in a fairly brief period of time, there is every indication that the parties engaged in meaningful discussion and consideration prior to signing." Order at 15 (June 15, 2003).

As to the third factor that Cesal challenges, whether the withdrawal of his plea would have burdened the judiciary, the district court determined that it would have. The court was ready to conduct the trial at the time of Cesal's plea. Pre-trial

14

proceedings had ended. The jury had been empaneled and was in the courthouse waiting to hear the case. After Cesal pleaded guilty, the jurors had been sent home.

On this record, and in light of the district court's well-reasoned order denying Cesal's motion to withdraw his guilty plea, we cannot find that the district court acted arbitrarily or capriciously. The court's ruling recognized that a guilty plea is not a meaningless gesture to be renounced on a lark; it is a "grave and solemn act, which is accepted only with care and discernment." United States v. Hyde, 520 U.S. 670, 676-77, 117 S. Ct. 1630, 1634 (1997) (internal marks and citation omitted).

## IV. Compliance with the Plea Agreement

Next we consider which party failed to comply with the plea agreement. Cesal contends that the government breached the agreement by seeking to hold him responsible for more than 1000 to 3000 kilograms of marijuana at sentencing. The government contends, and the district court agreed, that Cesal failed to comply with the plea agreement by, first, testifying untruthfully about Gillen's trial preparations at the hearing on Cesal's motion to withdraw his plea and, second, by attempting to withdraw his plea.

We determine whether the government has breached a plea agreement de novo. United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998).

15

Paragraph 1(b) of the plea agreement required Cesal to plead guilty, to admit that he was in fact guilty, and to admit that he was pleading guilty because he was in fact guilty. By attempting to withdraw his guilty plea, Cesal failed in his commitment to "timely and complete[ly] fulfill[]" each and every of his obligations under the plea agreement. See plea agreement at para. 3. His failure allowed the government to invoke paragraph 6(b) of the plea agreement under which it could "recommend the imposition of any sentence that the Government considers appropriate." That is just what the government did. The government did not breach the plea agreement.

## V. Ineffective Assistance of Counsel

Cesal argues that Michaels was ineffective during the hearing on the motion to withdraw Cesal's guilty plea and during the sentencing hearing. We decline to consider this issue at this time because the record has not been sufficiently developed through the adversarial process. Cesal may raise the issue again through a 28 U.S.C. § 2255 motion to vacate. Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003).

## VI. Proceeding Pro Se

Cesal contends that the district court erred by not allowing him to proceed

pro se at his sentencing hearing.[2]  Under the Sixth Amendment, a criminal defendant has the right to represent himself.  See Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975).  The defendant must "knowingly and intelligently" relinquish his right to counsel.  Faretta, 422 U.S. at 835, 95 S. Ct. at 2541; see also Brown v. Wainwright, 665 F.2d 607, 612 (Former 5th Cir. 1982) (en banc) ("A defendant is entitled to conduct his own defense . . . so long as the request is intelligently and clearly made." (emphasis added)).  "In the absence of a clear and knowing election, a court should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense."  Brown, 665 F.2d at 610.  Even if the defendant clearly asserts the right to proceed pro se, he may still waive the right "through . . . subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether."  Id. at 611. Where it appears that the defendant has abandoned his right to proceed pro se, the district court "need not engage in a dialogue with [the] defendant to determine whether there is a waiver of self-representation, in the absence of special circumstances."  Id. at 612.

---

[2] Cesal's briefs do not clearly identify the stage of the district court proceedings his pro se argument targets.  He frames his first issue as whether he had ineffective assistance of counsel during the hearing on his motion to withdraw his guilty plea and at sentencing, and whether the district court compounded the problem by denying him pro se status.  At the motion hearing, the court asked Cesal whether he was "ready and willing and satisfied with proceeding with [his] present attorney" and Cesal said "[y]es, I am."  Hearing Tr. at 5.  Accordingly we presume this argument about proceeding pro se refers to the sentencing hearing.

17

Prior to sentencing, Cesal wrote a letter to the court renewing his prior requests to proceed "Pro Se, or as Co-counsel Pro Se." In its September 24, 2003 order, the district court said that it felt "obliged" to respond to Cesal's letter. It denied Cesal's request to proceed as "co-counsel pro-se" and stated that it would "entertain any motions defendant might make to proceed without an attorney" at sentencing. Order at 7 (Sept. 24, 2003).

At sentencing, a substantial amount of time was dedicated to considering whether Cesal would proceed pro se. Cesal vacillated between wanting to proceed pro se and wanting to be represented because he was not prepared to go it alone at that time. We conclude that the district court did not err in denying Cesal's request to proceed pro se. Even if Cesal's letter before sentencing was a clear request to proceed pro se, that request became obscured at the sentencing hearing. Because Cesal changed his mind at sentencing, the court was not required to engage in an extensive dialogue with him. See Brown, 665 F.2d at 612. Although Cesal belatedly reasserted the right to proceed pro se, the court was not required to delve into it then because of vacillation on Cesal's part. Id. at 611.

## VII. Sentencing

Cesal attempts to raise three issues involving the calculation of his sentence. The government argues that Cesal knowingly and voluntarily waived his right to

18

appeal his sentence.[3]

We review whether a defendant knowingly and voluntarily waived his right to appeal de novo. United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997). Examination of the text of the plea agreement is insufficient for an appeal waiver to be voluntary and knowing. United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir. 1993). Instead, a district court must question a defendant about those aspects of a plea agreement that "involv[e] relinquishment of rights." Id. Therefore, we will only enforce a sentence appeal waiver if the government establishes either: "(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." Benitez-Zapata, 131 F.3d at 1446. "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).

We conclude that Cesal knowingly and voluntarily waived his right to appeal his sentence. When the court asked Cesal if he understood that his guilty plea meant that he waived his right to appeal, Cesal responded, "Yes." Cesal also

---

[3] The government does not contend that Cesal waived his right to appeal the issue involving whether he could proceed pro se during the sentencing hearing.

indicated that he understood the appeal waiver exception the court read to him, and he said he had read the plea agreement and understood it.  See United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001) (holding that a sentence appeal waiver was valid because "the waiver provision was referenced during [the defendant's] Rule 11 plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily").  Because Cesal knowingly and voluntarily waived his right to appeal his sentence, we dismiss the appeal insofar as it involves the three sentencing issues that Cesal seeks to raise.

For the forgoing reasons, we affirm Cesal's conviction and dismiss the part of Cesal's appeal that involves the calculation of his sentence.

**AFFIRMED IN PART AND DISMISSED IN PART.**