[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14178
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2005
THOMAS  K. KAHN
CLERK

D.C. Docket No. 04-00003-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE PERNELL MCKINNEY,
a.k.a. Maurise McKinney

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Florida

_____

(June 14, 2005)

Before ANDERSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Maurice Pernell McKinney appeals his convictions and his 300-month sentence for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) ("Count 2"); possession of firearms in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(B)(i), and 2 ("Count 3"); and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) ("Count 5"). McKinney argues on appeal that (1) his trial counsel provided ineffective assistance, (2) the district court abused its discretion in denying his motion to withdraw his guilty plea to the § 924(c) offense in Count 3, (3) the court erred in imposing a mandatory minimum ten-year consecutive sentence based on its judicial finding that McKinney possessed an Intratec 9 millimeter semi-automatic pistol, and (4) the court violated McKinney's Sixth Amendment right to a jury trial in considering the federal guidelines in sentencing him, in light of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm McKinney's convictions and sentence.

A federal grand jury returned a superseding indictment, charging McKinney with the above-referenced offenses and listing the firearms McKinney allegedly

possessed in furtherance of a conspiracy to distribute cocaine base in Count 3 of this indictment, that is, a Rossi .38 Special revolver ("revolver"), and an Intratec 9 millimeter semi-automatic pistol ("assault weapon").[1] On April 26, 2004, McKinney pled guilty to Count 5 of his superseding indictment, without the benefit of a plea agreement. During McKinney's change-of-plea hearing, he conceded that he had both knowledge of, and access to, the revolver, the assault weapon, and the ammunition. McKinney also advised the court that, although he wished to have a trial on the remaining counts, he was waiving his right to a trial by jury because these offenses involved primarily legal issues.

On May 6, 2004, the day McKinney's bench trial was scheduled to commence on his remaining charges, he plead guilty to Counts 2 and 3, with the unwritten understanding that the government was agreeing to dismiss Count 1 of his superseding indictment. After confirming that McKinney was competent to plead guilty and understood the rights he was waiving by pleading guilty, the court explained the remaining charges to McKinney. As part of this discussion, McKinney's counsel informed the court that (1) whether McKinney received a mandatory minimum consecutive sentence of five or ten years' imprisonment for

---

[1] Codefendant Rollins was charged in this same superseding indictment with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 ("Count 1"); a § 924(c) offense ("Count 3"); and a § 922(g)(1) offense ("Count 4").

3

his § 924(c) offense in Count 3 depended on whether the firearm he possessed was the revolver or the assault weapon,[2] (2) the parties had agreed that the court would decide this issue at sentencing, and (3) McKinney wished to have his plea accepted. McKinney's counsel noted, however, that he was not certain whether "possession" could be a sentencing factor. After discussing the possible implications of Apprendi, the court and the parties concluded that McKinney's admission to possessing the revolver and his leaving for the court's determination the issue whether he also possessed the assault weapon would not result in a constitutional violation.

The government then proffered that, had the case proceeded to trial, it would have proven that (1) officers with the Leon County Sheriff's Office were attempting to locate Rollins, who was a fugitive; (2) as part of this investigation, a confidential information ("CI") arranged a meeting with Rollins at a McDonald's restaurant, at which time the CI was to buy cocaine base from Rollins; (3) when the officers arrived at the McDonald's parking lot, they observed a vehicle in

---

[2] "[A]ny person who, during an in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possess a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years." See 18 U.S.C. § 924(c)(1)(A)(i). However, "[i]f the firearm possessed by a person convicted of a violation of this subsection—(i) is a short-barreled rifle, short-barreled shot-gun, the person shall be sentenced to a term of imprisonment of not less than 10 years." See 18 U.S.C. § 924(c)(1)(B)(i).

4

which Rollins was in the passenger seat and McKinney was in the driver seat; (4) when Rollins went inside the restaurant, the officers arrested him; (5) the officers then went to the vehicle in which McKinney was sitting and arrested him; (6) during a search of this vehicle, the officers recovered both the assault weapon and the resolver from in between the front driver and passenger seats; (7) the officers also recovered rounds of .38 ammunition from McKinney's pocket, proof that the vehicle was owned by McKinney, and cocaine base from Rollins's pocket; and (8) McKinney stated that he and Rollins had (i) driven around in the vehicle that day, (ii) sold cocaine base to someone, and (iii) driven to the McDonald's restaurant to sell more cocaine base to the CI.

McKinney generally verified that these facts were correct, stating that, although he did not own either of the firearms, he had on his person ammunition for the pistol, he knew that Rollins had both of the firearms, and the firearms were in McKinney's vehicle while he and Rollins conducted drug transactions. The court then informed McKinney of the potential consequences of his plea, including that he would be subject to a consecutive mandatory minimum sentence of either five or ten years' imprisonment, dependent on whether the court determined that he possessed only the revolver or both the revolver and the assault weapon. McKinney also agreed that (1) no one had promised him anything in

5

exchange for his plea, (2) no one had coerced him into pleading guilty, (3) he understood that he would not be permitted to withdraw his plea, and (3) he was satisfied with his counsel's representation. The court accepted McKinney's plea, finding that McKinney was competent to plead guilty, he understood the nature of his charges and the consequences of his plea, a sufficient factual basis supported the plea, and McKinney entered into the plea freely and voluntarily, after consulting with competent counsel.

McKinney's presentence investigation report ("PSI") calculated his base offense level for Counts 2 and 5 as 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A).[3] The probation officer recommended a two-level upward adjustment, pursuant to U.S.S.G. § 2K2.1(b)(4), because the assault weapon previously had been reported stolen by the owner, and a two-level downward adjustment, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility. Based on the officer's determination that McKinney was subject to an enhanced sentence under 18 U.S.C. § 924(e) (armed career criminal), and that McKinney possessed a firearm in connection

_____

[3] The PSI reflects that Count 2 (U.S.S.G. § 2D1.1) and Count 5 (U.S.S.G. § 2K2.1) were grouped together, pursuant to U.S.S.G. § 3D1.2(c). Because the use of § 2K2.1 resulted in the highest offense level, it was used as the offense level for the grouped offenses, pursuant to U.S.S.G. § 3D1.3(a). In addition, because McKinney had to serve a mandatory minimum statutory sentence of ten years' imprisonment for his § 924(c) offense in Count 3 of his superseding indictment, this statutory sentence was his guideline sentence for Count 3, pursuant to U.S.S.G. § 2K2.4(b), and Count 3 was exempted from the grouping, pursuant to U.S.S.G. § 3D1.1(b).

with a controlled-substance offense, he applied an enhanced offense level of 34, pursuant to U.S.S.G. § 4B1.4(a) and (b)(3)(A).  After the officer adjusted this enhanced offense level downwards two levels for acceptance of responsibility, pursuant to § 3E1.1(a), McKinney had a total offense level of 32 for Counts 2 and 5.  With a criminal history category of VI, McKinney's resulting guideline range for these counts was 210 to 262 months' imprisonment.  McKinney, however, also was subject to a consecutive mandatory minimum statutory sentence of either five or ten years' imprisonment for his § 924(c) offense in Count 3.

McKinney objected to the probation officer's consideration of the assault weapon in calculating his guideline range and to his mandatory minimum statutory sentence, arguing that Rollins, instead, owned and possessed this firearm. McKinney also generally raised an objection to the court's determination of this issue in light of Blakely.  The probation officer responded that, because McKinney aided and abetted Rollins in Rollins's use of the assault weapon, he should be held accountable for this conduct.  The probation officer noted, as well, that, because McKinney was a career offender, this objection had no real impact on his guideline sentence.[4]

---

[4]  The probation officer appears to have mis-spoken here because McKinney was not deemed a career offender who was sentenced under U.S.S.G. § 4B1.1, but rather was sentenced as an armed career criminal under U.S.S.G. § 4B1.4.  Under either enhancement, however, the calculations under Chapter 2 would be rendered irrelevant.

On July 26, 2004, prior to sentencing, McKinney filed a motion to withdraw his guilty plea to Count 3, arguing that he plead guilty to Count 3 based on his trial counsel's misadvice that the issue whether he possessed the assault weapon was a sentencing factor, instead of an element of the offense that the government had to prove beyond a reasonable doubt. McKinney also argued in a written motion that the court should conclude that the federal guidelines were unconstitutional in light of Blakely. In doing so, McKinney also requested that the court determine a sentence that "adequately consider[ed] the circumstances of the offense and [his] personal circumstances," instead of "merely complying with the mechanical calculations of the [g]uidelines."

On July 30, 2004, at a joint sentencing hearing for McKinney and Rollins, McKinney renewed his motion to withdraw his plea as to Count 3 of the superseding indictment. McKinney's counsel explained that, in advising McKinney that his possession of the assault weapon in Count 3 was a sentencing factor, counsel "had it wrong." After the government objected to this motion, the court denied it. The court discussed that (1) the Supreme Court's decision in Blakely did not effect whether a defendant could waive his right to a jury trial, (2) McKinney effectively waived this right, and (3) both his waiver of his right to a trial and his plea were knowing, voluntary, and intelligent.

The court next confirmed that McKinney's only objections to the PSI were his Blakely objection and his argument that the court should not determine that he possessed the assault weapon. The court also clarified that the assault-weapon issue would not affect the guideline calculation; rather, it would affect the mandatory minimum sentence for Count 3. In addition to the court considering as relevant evidence McKinney's admissions during his two change-of-plea hearings, the government stipulated that Rollins brought the assault weapon to McKinney's car on the day in question.

McKinney then argued that, because the record reflected that his connection with the assault weapon was "remote," the government did not show that he possessed the assault weapon in furtherance of the drug offense. Citing to Bazemore v. United States, 138 F.3d 947 (11th Cir. 1998), the government responded that, by driving Rollins around to commit drug transactions and allowing the firearms to be in his vehicle, McKinney aided and abetted Rollins's acts and, thus, should be held accountable for both of the firearms they possessed in furtherance of these acts. McKinney replied that the facts in Bazemore were distinguishable because the defendant in that case had a greater involvement in the drug transactions and, thus, benefitted more from the presence of the firearms.

9

The court concluded that McKinney, as an aider or abettor, possessed the assault weapon in furtherance of the drug-trafficking offense. The court also clarified that McKinney's guideline range for Counts 2 and 5 was 210 to 262 months' imprisonment,[5] and that his total mandatory minimum sentence was 300 months' imprisonment.

McKinney next argued that the court should determine that the federal guidelines were unconstitutional and only impose his total mandatory minimum statutory sentence. In the alternative, he argued that the court should impose a sentence at the bottom of his total guideline range, that is 330 months' imprisonment,[6] because (1) he was "remotely connected to [the offenses];" (2) he had not committed another offense for 11 years, albeit because he had been incarcerated; and (3) he offered to cooperate with the government.

Explaining in detail why it believed that the Supreme Court's decision in Blakely was applicable to the federal guidelines, the court determined, over the government's objection, that the guidelines were unconstitutional, but that courts still should consider them in an advisory fashion in sentencing defendants. The

---

[5] Although the transcript states that the sentencing range was 201 to 262 months' imprisonment, this statement appears to be a clerical error.

[6] This total guideline range results from combining McKinney's guideline range of 210 to 262 months' imprisonment in Counts 2 and 5, with his consecutive statutory sentence of 10 years' (120 months') imprisonment in Count 3.

court also explained that, although it had considered McKinney's guideline range, it had concluded that McKinney's total mandatory minimum statutory sentence of 25 years' imprisonment was appropriate. In doing so, the court expressly stated that it had considered McKinney's attempts to cooperate, the fact that the instant conduct involved "a fairly limited drug offense," and that Rollins's guideline range was significantly less primarily because he plead guilty several days before McKinney's plea. After concluding that the PSI was accurate, the court sentenced McKinney to a total sentence of 300 months' imprisonment (25 years' imprisonment), 5 years' supervised release, and a $300 special assessment fee.

**Issue 1:      Claim of ineffective assistance**

As a preliminary issue, McKinney argues that the record shows that his trial counsel's performance was deficient because his counsel, in arguing that the district court should allow McKinney to withdraw his guilty plea, admitted that he misadvised McKinney on the elements of his § 924(c) offense. To successfully establish a claim of ineffective assistance of counsel, a plaintiff must prove that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984).

11

We, however, generally will not consider on direct appeal claims of ineffective assistance of counsel if the district court neither entertained this claim, nor developed a factual record. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (citing United States v. Khoury, 901 F.2d 948, 969 (11th Cir. 1990)). We have explained that, if there is insufficient evidence in the record to consider this claim on direct appeal, it should be resolved in a 28 U.S.C. § 2255 proceeding, where an evidentiary hearing may be held. United States v. Camacho, 40 F.3d 349, 355 (11th Cir. 1994).

Here, in moving the court to withdraw McKinney's guilty plea, McKinney's counsel stated, in a conclusory fashion, that he "got it wrong" in advising McKinney that McKinney's possession of the assault weapon was a sentencing factor, instead of an element of his § 924(c) offense. The record, however, is not sufficiently developed to determine either whether McKinney's counsel's performance was deficient, or whether McKinney was prejudiced by this performance. Thus, we will not review on direct appeal McKinney's claim of ineffective assistance of counsel. See Bender, 290 F.3d at 1284.

**Issue 2:** **Denial of McKinney's motion to withdraw his guilty plea to possession of firearms in furtherance of a drug-trafficking offense**

McKinney also argues that the court erred in denying his motion to withdraw his plea of guilty to his § 924(c) offense in Count 3 of his superseding indictment because, as discussed above, his counsel admitted on the record that he believed that he misadvised McKinney that possession of the assault weapon was a sentencing factor, instead of an element of the crime to be determined by a jury beyond a reasonable doubt. McKinney also contends that, because of this misadvice, he neither understood the nature of this charge, nor the potential consequences of his plea. McKinney asserts that the court did not conserve judicial resources by denying this motion because a trial would have been short, consisted primarily of stipulations, and involved only one witness. Finally, McKinney argues that the government would not have been prejudiced by the court's granting of this motion because (1) the amount of evidence was not substantial, and (2) he filed the motion shortly after pleading guilty.

We review the denial of a motion to withdraw a guilty plea for an abuse of discretion; thus, it only will reverse a court's denial of a motion to withdraw if it is "arbitrary and unreasonable." United States v. Cesal, 391 F.3d 1172, 1179 (11th Cir. 2004) (quotation omitted). A defendant may withdraw a guilty plea before a

13

sentence is imposed if he shows a "fair and just reason" for the withdrawal. Id. (quoting Fed.R.Crim.P. 11(d)(2)(B)). "To determine whether the defendant has given a fair and just reason for withdrawal, the district court examines the totality of the circumstances, including: '(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.'" Cesal, 391 F.3d at 1179 (quotation omitted).

To the extent McKinney is arguing that the court should have permitted him to withdraw his plea to the § 924(c) offense in Count 3 because his counsel misadvised him that the type of firearm he possessed was a sentencing factor, instead of an element of the offense for the jury to determine beyond a reasonable doubt, this argument is without merit. The Supreme Court clarified in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), that § 924(c)(1)(A) does not specify elements of a crime that must be charged in an indictment, submitted to the jury, or proved beyond a reasonable doubt. Id., 536 U.S. at 552-56, 122 S.Ct. at 2411-14. The Harris Court explained that an increase in the defendant's statutory mandatory minimum sentence based on a judicial finding that the defendant "brandished" the firearm, pursuant to § 924(c)(1)(A)(ii),

14

"[did] not evade the requirements of the Fifth and Sixth Amendments. Congress 'simply took one factor that has always been considered by sentencing courts to bear on punishment . . . .and dictated the precise weight to be given that factor." Id. at 568, 122 S.Ct. at 2420. The Harris Court also discussed that, when § 924(c) was amended in 1998, numbered subsections were added, "describing, as sentencing factors often do, "special features of the manner in which" the statute's "basic crime" could be carried out," and only altering the mandatory minimum sentences for the court to impose. Id. at 554, 122 S.Ct. at 2412-13.

Instead of whether the defendant "brandished" the firearm under § 924(c)(1)(A)(ii), the subsection at issue here—§ 924(c)(1)(B)(i)—involves the type of firearm possessed. (See R1-18). In Castillo v. United States, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), the Supreme Court, in examining a prior version of § 924(c)(1), determined that its provisions on types of firearms defined separate crimes that had to be proven to a jury beyond a reasonable doubt. See id., 530 U.S. at 123-24, 120 S.Ct. at 2092-93. However, in reaching this determination, the Castillo Court relied heavily on the structure of the former § 924(c)(1), that is, that "Congress placed the element of 'uses or carries a firearm' and the word 'machinegun' in a single sentence, not broken up with dashes or

15

separated into subsections." See United States v. Riley, 250 F.3d 1303, 1305 (11th Cir. 2001) (quoting Castillo, 530 U.S. at 124-25, 120 S.Ct. at 2093).

Because the current version of § 924(c)(1)(B)—the version applicable in the instant case—dictates in separate subsections applicable mandatory statutory sentences that result dependent on the type of firearm involved in the offense, we conclude, based on the Supreme Court's similar analysis in Harris, that this subsection only involves a sentencing factor. See 18 U.S.C. § 924(c)(1)(B) (2004); see also Harris, 536 U.S. at 554, 122 S.Ct. at 2412-13.[7] Moreover, we have determined that the Supreme Court's analysis of § 924(c)(1) applies not only to direct conduct of defendants, but also to conduct that they aid or abet. United States v. Williams, 334 F.3d 1228, 1232-33 (11th Cir. 2003). Thus, McKinney's counsel did not misadvise him that the type of weapon he possessed in Count 3 of his superseding indictment, albeit through a theory of aiding and abetting, was a sentencing factor for the court to determine.

---

[7] Although we have not directly addressed whether the type of firearm involved under the current version of § 924(c)(1)(B)(i) is a sentencing issue or an element of the offense, other circuits that have addressed this issue have determined that it involves a sentencing issue. See United States v. Harrison, 272 F.3d 220, 225 (4th Cir. 2001) (sentencing factor); United States v. Sandoval, 241 F.3d 549, 551-52 & n.1 (7th Cir. 2001) (same); United States v. Cavely, 318 F.3d 987, 1000 (10th Cir. 2003) (same); But see United States v. Bundy, 239 F.3d 802, 807 (6th Cir. 2001) (applying Castillo to revised § 924(c)(1)(B), and concluding that the type of weapon used is an element of the offense).

16

Examining the other factors applicable in determine whether McKinney showed a "fair and just reason" for his motion to withdraw his plea to Count 3, the government arguably would not have been prejudiced substantially if the court had granted McKinney's motion to withdraw because only a little more than two months elapsed between his pleading guilty to Count 3 on May 6, 2004, and his filing his motion to withdraw this plea on July 26, 2004. On the other hand, regardless of the limited number of witnesses involved and estimated length of the trial, the court's denial of McKinney's motion to withdraw conserved judicial resources. See United States v. Freixas, 332 F.3d 1314, 1319 (11th Cir. 2003) (concluding that the court's decision denying the defendant's motion to withdraw "plainly served the goal of conserving judicial resources, as it obviated the need for a full trial on the merits in this case").

Moreover, McKinney failed to show that his plea was not knowing and voluntary. "When a district court accepts a guilty plea, it must ensure that the three core concerns of [Fed.R.Crim.P. 11] have been met: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty

plea."  See Freixas, 332 F.3d at 1318 (internal quotation and marks omitted).[8]

Here, similar to the facts in Freixas, the court, before accepting McKinney's plea, confirmed that McKinney was competent to plead guilty and understood the rights he was waiving by pleading guilty.  The court also verified that McKinney (1) understood his remaining charges; (2) knew of the potential consequences of his plea, including that he would be subject to a consecutive mandatory minimum sentence of either five or ten years' imprisonment, dependent on whether the court determined that he possessed the assault weapon; and (3) had not been threatened or coerced into pleading guilty.  In addition, the court verified that McKinney's plea was supported by a sufficient factual basis.  See Fed.R.Crim.P. 11(b)(3) (before accepting a guilty plea, a district court "must determine that there is a factual basis for the plea").  Thus, the court did not abuse its discretion in denying McKinney's motion to withdraw his plea to Count 3 of his superseding indictment.  See Cesal, 391 F.3d at 1179.

---

[8]  We recently have reiterated that, although the voluntariness of a guilty plea is reviewed de novo, we "will not overturn a judge's decision to accept a guilty plea unless there has been an abuse of discretion."  See United States v. Frye, 402 F.3d 1123, 1126-27 (11th Cir. 2005) (concluding that the record showed that the defendant understood the charges against him and voluntarily and knowingly plead guilty when the defendant stated that he (1) was satisfied with his counsel's representation, (2) was not coerced into pleading guilty, and (3) understood the charges and consequences of pleading guilty).

**Issue 3:**    <u>**Mandatory minimum sentence in Count 3**</u>

McKinney next argues that the court erred in concluding that he possessed the assault weapon when the undisputed evidence showed that he only drove Rollins to the drug transaction, did not get out of the vehicle, and did not receive any benefit from the drug transaction. McKinney also contends that court's determination that he facilitated the carrying of this firearm rested on an improper finding of "guilt by association." McKinney concludes, as such, that the court erred in imposing a consecutive mandatory minimum sentence under § 924(c).

As a preliminary matter, if we construe McKinney's argument as challenging the fact that the court, instead of a jury, determined this issue, the Supreme Court held in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u>, 530 U.S. at 490, 120 S.Ct. at 2362-63. Before McKinney's sentencing hearing, the Supreme Court revisited that rule in <u>Blakely</u>, in the context of Washington state's sentencing guideline scheme, and clarified that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>. . . . In

19

other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ___, 124 S.Ct.at 2537 (emphasis in original). Applying these principles, the Court held that Blakely's sentence—which was enhanced under the state guidelines based on the sentencing court's additional finding by a preponderance of the evidence that Blakely committed his kidnaping offense with deliberate cruelty—violated the Sixth Amendment. Id. at ___, 124 S.Ct. at 2534-38.

We, however, have concluded that Blakely "does not undermine the validity of minimum mandatory sentences, at least not where the enhanced minimum does not exceed the non-enhanced maximum." Spero v. United States, 375 F.3d 1285, 1286 (11th Cir. 2004), cert. denied, 125 S.Ct. 1099 (2005), and cert. denied, 125 S.Ct. 1345 (2005). We explained in Spero that "Blakely, like Apprendi, explicitly distinguished minimum mandatory sentences from the circumstances involved in those cases and indicated that McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986),[9] is still good law." Spero, 375 F.3d at 1286. In the

_____

[9]    In McMillan, the Supreme Court held that imposition of a minimum mandatory sentence predicated upon a fact found by the judge by a preponderance of the evidence violates neither Due Process nor the jury trial guarantee of the Sixth Amendment, so long as the statutory maximum authorized by the jury's verdict is not exceeded. See McMillan, 477 U.S. at 87-88, 93, 106 S.Ct. at 2416-17, 2420.

20

instant case, the statutory maximum for McKinney's § 924(c) offense, without reference to his possession of the assault weapon, was life imprisonment. See Harris, 536 U.S. at 552-56, 122 S.Ct. at 2411-14 (holding that the current version of § 924(c)(1) defines one offense, with a penalty ranging from five years' to life imprisonment). Because McKinney's total 300-month sentence did not exceed this maximum statutory sentence, no Apprendi error resulted.

Furthermore, to the extent McKinney is arguing that the court erred in accepting his plea and sentencing him in Count 3 because his codefendant owned the assault weapon and brought it into McKinney's vehicle, the Supreme Court determined in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that a conviction for "use" under § 924(c) requires "active employment of the firearm," as opposed to mere possession. Id., 516 U.S. at 143-45, 116 S.Ct. at 506. We, however, have concluded that, "[a]lthough the Bailey decision narrowed the scope of conduct for "use" of a firearm under § 924(c), nothing in the opinion suggests that it was intended to provide criminals with immunity from well-established doctrines of criminal law," including the theory of aiding and abetting.[10] Bazemore, 138 F.3d at 949.

---

[10] "Whoever . . . aids, abets, counsels, commands, induces or procures [a crime's] commission, is punishable as a principal." See 18 U.S.C. § 2(a).

In Bazemore, we discussed that, to prove aiding and abetting, the government must show "that a substantive offense was committed, that the defendant associated himself with the venture, and that he committed some act which furthered the crime." Id. Thus, § 924(c) does not permit "guilt by association." Id. (quoting United States v. Thomas, 987 F.2d 697, 702 (11th Cir. 1993)). Despite this burden, however, we determined that the government in Bazemore produced ample evidence linking the defendant to the gun because the defendant (1) drove both the codefendants and the gun to a drug deal, and (2) knowingly accepted the gun's protection while he was inspecting the marijuana. Bazemore, 138 F.3d at 749. In reaching this conclusion, we also explained that (1) "once knowledge on the part of the aider and abettor is established, it does not take much to satisfy the facilitation element"; (2) as the driver of the vehicle, the defendant was "vital to the transportation of the weapon during the commission of the drug crime"; and (3) the defendant could not "knowingly benefit from the protection afforded by the firearm carried by his companion and then subsequently evade criminal liability for its presence." Id.[11]

---

[11] We note, however, that, unlike McKinney's challenge to his mandatory minimum sentence, both Bailey and Bazemore involved attacks on the defendants' convictions for using or carrying a firearm in connection with a drug-trafficking crime, whereby the government had the burden of showing guilt beyond a reasonable doubt. See Bailey, 516 U.S. at 138-39, 116 S.Ct. at 503; see also Bazemore, 138 F.3d at 948.

Here, McKinney admitted during his change-of-plea hearing that (1) there were two firearms in the vehicle, (2) he knew of their presence, and (3) he drove the vehicle while they sold drugs earlier in the day. McKinney also stated that, although he did not own either firearm, he had bullets for the revolver, which was recovered from the same general location in the vehicle as the assault weapon. Moreover, McKinney conceded during his change-of-plea hearing on his § 922(g)(1) charge in Count 5 that the firearms were "where [he] could get to them if [he] wanted to." Thus, similar to the facts in Bazemore, McKinney knowingly provided transportation for a drug transaction and accepted protection from the assault weapon. The court, therefore, did not err in accepting McKinney's plea to Count 3 and in sentencing him based on his possession of the assault weapon under the theory of aiding and abetting. See Bazemore, 138 F.3d at 749; see also Rutledge v. United States, 138 F.3d 1358, 1559 (11th Cir. 1998) (concluding that the defendant admitted to all of the elements required under the theory of aiding and abetting by admitting to the government's stipulation that the weapon was in his possession and that it was used in connection with drug activities).[12]

---

[12] As the district court recognized, we also have determined that the Supreme Court's decision in Bailey did not negate the applicability of the doctrine established in Pinkerton v. United States, 328 U.S. 640, 647-48, 66 S.Ct. 1180, 1184-85, 90 L.Ed.2d 1489 (1946). See United States v. Diaz, 248 F.3d 1065, 1099 (11th Cir. 2001). Thus, criminal defendants remain liable for the "reasonably foreseeable" actions of the co-conspirators—including the using or carrying of a firearm during the commission of a crime of violence. See id.

**Issue 4:      Blakely/Booker Issue**

In a brief he prepared prior to the Supreme Court's decision in Booker, McKinney argues in this last issue that the district court committed a Blakely violation when it used the federal  guidelines as an artificial guide to "fashion" McKinney's sentence.  McKinney contends that courts may not apply the guidelines, even in an advisory fashion, because they are facially unconstitutional. Without citing to the record or caselaw, McKinney further asserts that the court "would have given [him] a much lighter sentence had it not used the guideline as a measuring stick," and that court should have applied his consecutive mandatory minimum statutory sentences because "mandatory minimums, etc., were intended by Congress to act in conjunction with the Guidelines."

Because McKinney timely raised a Blakely objection in the district court, we review his Blakely/Booker claim on appeal de novo, but reverse only for harmful error.  See United States v. Paz, No. 04-14829, manuscript op. at 4 (11th Cir. April 5, 2005) (citation omitted).  "To find harmless error, [this Court] must determine that the error did not affect the substantial rights of the parties."  Paz, No. 04-14829, manuscript op. at 5 (quotation omitted).  We further explained in Paz as follows:

> A constitutional error, such as a <u>Booker</u> error, must be disregarded as not affecting substantial rights, if the error is harmless beyond a reasonable doubt. This standard is only met where it is clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained. The burden is on the government to show that the error did not affect the defendant's substantial rights.

<u>Id.</u> (internal quotations and marks omitted).

As discussed above, before McKinney's sentencing hearing, the Supreme Court, in the context of Washington state's sentencing guideline scheme, held in <u>Blakely</u> that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> any additional findings." <u>Blakely</u>, 542 U.S. at ___, 124 S.Ct. at 2537 (emphasis in original). In a footnote, however, the Supreme Court explicitly remarked that "[t]he Federal Guidelines are not before us, and we express no opinion on them." <u>Id.</u> at ___ n.9, 124 S.Ct. at 2538 n.9.

While the instant case was pending on appeal, the Supreme Court issued its decision in <u>Booker</u>, finding "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in

Blakely.  Booker, 543 U.S. at ___, 125 S.Ct. at 749.  Resolving the constitutional question left open in Blakely, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.  Id. at ___,125 S.Ct. at 749-51.  In extending its holding in Blakely to the Guidelines, the Court explicitly reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  Id. at ___, 125 S.Ct. at 756.

In a second and separate majority opinion, the Court in Booker concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only.  Id. at ___, 125 S.Ct. at 764.  Thus, the guidelines range is now advisory; it no longer dictates the final sentencing result but instead is an important sentencing factor that the

sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a).[13] Id. at ___, 125 S.Ct. at 764-65).

Following the Supreme Court's decision in Booker, and on remand, we re-examined in United States v. Reese, 397 F.3d 1337 (11th Cir. 2005), a defendant's guideline sentence that had been enhanced, over objection, because the defendant possessed a firearm in connection with another felony. Id. at 1337.[14] Concluding that the defendant's sentence was in violation of the Sixth Amendment, we vacated and remanded his case and ordered resentencing consistent with the Supreme Court's opinions in Booker. Id. at 1338.

In Paz, we similarly examined a Blakely/Booker challenge to a six-level enhancement based on the district court's factual finding, which was not admitted

---

[13]    These other relevant factors in § 3553(a) include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

[14]    Prior the Supreme Court's issuance of its decision in Booker, we had determined that no error had occurred because Blakely did not apply to the federal guidelines. See United States v. Reese, 382 F.3d 1308 (11th Cir. 2004), judgment vacated by Reese v. United States, ___ U.S. ___, 125 S.Ct. 1089, 160 L.Ed.2d 1058 (2005).

by the defendant, that the amount of loss from the defendant's offense of conviction was between $30,000 and $70,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(D). Paz, No. 04-14829, manuscript op. at 2. We determined that, because the defendant's sentence was enhanced, under a mandatory guidelines system, based on facts found by the judge, the defendant's Sixth Amendment right to a jury trial was violated. Id. at 5. Moreover, we determined that the government could not show that this error was harmless beyond a reasonable doubt because it was evident from the sentencing transcript that, had the court used the guidelines in an advisory fashion, Paz's sentence would have been shorter. Id. at 6.[15] We concluded, as such, that the constitutional error affected the defendant's substantial rights, and it remanded for resentencing consistent with Booker. Id.

To the extent the court calculated McKinney's guideline range based on prior convictions or facts to which McKinney admitted during his change-of-plea hearings, no error, harmless or otherwise, occurred. See United States v. Shelton, 400 F.3d 1325, 1329-30 (11th Cir. 2005) (concluding that the court did not err when it enhanced defendant's sentence based on (1) facts admitted by the

_____

[15] During the defendant's sentencing hearing in Paz, the district court explicitly stated that, if the guidelines were found unconstitutional, if would have sentenced the defendant to a shorter term of imprisonment. See Paz, No. 04-14829, manuscript op. at 4.

28

defendant, or (2) his prior convictions)[16]; see also United States v. Camacho-Ibarquen, No. 04-11155, slip op. at 1757-58 (11th Cir. March 30, 2005) (court did not violate the defendant's Sixth Amendment rights by applying an enhancement based on his prior convictions); United States v. Orduno-Mireles, No. 04-12630, slip op. at 1792-93 (11th Cir. April 6, 2005) (Booker is not implicated when a defendant's sentence is enhanced based on a prior conviction). More importantly, unlike the facts in Reese and Paz, the court here only treated the federal guidelines as advisory. Indeed, the court sentenced McKinney to his total minimum mandatory statutory sentence of 300 months' imprisonment, instead of within his total guideline range of 330 to 382 months' imprisonment. No violation of the Sixth Amendment or Booker, therefore, occurred. See Booker, 543 U.S. at ___, 125 S.Ct. at 756.[17]

---

[16] Although we determined that no Sixth Amendment violation occurred in Shelton, we concluded that Booker error occurred and that this error was prejudicial under the third prong of plain-error review because the district court considered the guidelines binding as opposed to advisory, and the defendant showed on appeal that "there [was] a reasonable probability [that] the district court would have imposed a lesser sentence [] if it had not felt bound by the [g]uidelines." See Shelton, 400 F.3d at 1330-32. On the other hand, as discussed below, no non-constitutional error occurred in the instant case because the district court did not treat the guidelines as mandatory.

[17] In addition, because the district court correctly imposed the statutory mandatory minimum sentence, any error in the guideline calculations is harmless. See United States v. Raad, No. 03-15300, manuscript op. at 2 n.1 (11th Cir. April 21, 2005) (concluding that any error in the guideline calculations was harmless because the district court correctly imposed the statutory mandatory minimum sentence).

Furthermore, in adopting the PSI's facts and calculations, the court, at least implicitly, considered the PSI's description of the offense conduct and McKinney's history and characteristics. In imposing a sentence below McKinney's guideline range, the court explicitly stated that, although it had considered McKinney's guideline range, it had concluded that his mandatory minimum sentence was appropriate because he had attempted to cooperate, his offenses involved "a fairly limited drug offense," and his codefendant's guideline range was significantly less primarily because his codefendant had plead guilty several days earlier than McKinney. Thus, the court properly considered the nature and circumstances of the offense, McKinney's character, and the need to avoid unwarranted sentencing disparities between the codefendants. See 18 U.S.C. § 3553(a)(1)-(3), (6).

Accordingly, we conclude that the district court did not commit reversible error in denying McKinney's motion to withdraw his guilty plea to his § 924(c) offense, imposing a mandatory minimum ten-year consecutive sentence based on his conviction for this offense, or in sentencing him in light of Blakely and Booker. We, therefore, affirm.

**AFFIRMED.**