[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 19, 2005
THOMAS K. KAHN
CLERK**

No. 04-13845
Non-Argument Calendar

_____

D.C. Docket No. 03-20509-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY GAVIRIA,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(July 19, 2005)**

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Jimmy Gaviria appeals his conviction and 51-month sentence for money

laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). On appeal, Gaviria argues

that the district court (1) violated <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004), and by extension, <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005), by applying a six-level enhancement under U.S.S.G. § 2S1.1(b)(1) for knowingly laundering drug proceeds; (2) erred in denying him an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1; and (3) abused its discretion in denying his motion at the second sentencing hearing to withdraw his plea and proceed to trial.

Upon a thorough review of the record on appeal, including the Federal Rule of Criminal Procedure 11 plea hearing and sentencing transcripts and the presentence investigation report ("PSI"), and after consideration of the briefs of the parties to this Court, we AFFIRM the district court's denial of Gaviria's motion to withdraw his guilty plea but VACATE Gaviria's sentence and REMAND for resentencing consistent with <u>Booker</u>.

## I. BACKGROUND

Gaviria, along with two other codefendants, was charged in a seven-count indictment with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B) and (C), and 1956(h), and four substantive counts of money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B) and (C), and 18 U.S.C. § 2. Notably, each of the counts against Gaviria alleged that the laundered monetary

2

instruments in question were "represented to be the proceeds of a specified unlawful activity, that is, the receiving, concealing, buying, selling and otherwise dealing in controlled substances." R1-1 at 2, 3, 4. Each of the substantive money-laundering counts alleged an approximate dollar value involved, specifically, $30,000 (Count Two), $40,000 (Count Three), $50,000 (Count Five), and $20,000 (Count Six). Although Gaviria initially pled not guilty, he later entered into a written plea agreement with the government.

In the plea agreement, Gaviria agreed to plead guilty to one substantive count of money laundering, Count Five, in exchange for the government's promise to dismiss the remaining charges and to recommend at sentencing a three-level reduction for acceptance of responsibility under § 3E1.1, conditioned on his full, accurate, and complete disclosure of his relevant offense conduct. R1-67 at 1-3. The agreement further provided that Gaviria faced a statutory maximum term of imprisonment of 20 years, that he would be sentenced in accordance with the Sentencing Guidelines, and that he could not withdraw his guilty plea solely as a result of the sentence imposed. The plea agreement did not contain any agreed-upon facts regarding Gaviria's offense conduct.

At the Federal Rule of Criminal Procedure 11 plea colloquy, the district court advised Gaviria, inter alia, of the constitutional rights he was waiving by

3

pleading guilty, that he faced a 20-year statutory maximum sentence, and that his sentence would be calculated under the Sentencing Guidelines. Gaviria affirmed under oath that he had discussed with counsel the charges and the case in general and was fully satisfied with his counsel's representation and advice. The government explained the basic elements of a money-laundering offense, including the element "that the financial transaction involved property represented . . . to be the proceeds of a specified unlawful activity." R2 at 11. The government then proffered that it could prove beyond a reasonable doubt that Gaviria met several times with a confidential informant ("CI") and ultimately agreed to launder funds that Gaviria believed to be drug proceeds. When asked by the court whether he agreed with the government's proffer, Gaviria responded that "I have a different opinion whether that can be proven. But given the – I understand if that were to be proven that would be the basis." Id. at 12. Gaviria's counsel then explained that Gaviria agreed that the government's proffer was sufficient to establish a prima facie case, but that "[t]here was one issue he wanted to argue at sentencing and the way it was raised it would somehow be precluded from that." Id. at 12-13. After advising Gaviria that he would need to go to trial if he believed that the government could not prove a case against him, the court instructed the government to restate its prima facie case as to Count Five. The

4

government asserted that, on 5 August 2002, Gaviria met with the CI at a shopping center, received $50,000 that Gaviria "actually was told were drug proceeds", and agreed to launder the funds by exchanging $20,000 into money orders and wiring $30,000 to Colombia. Id. at 13-14. The government explained that Gaviria received $3,600 in cash as his fee, and subsequently returned the $50,000 in laundered funds to the CI. The court again asked Gaviria if he believed that the government could prove these facts if the case went to trial, and Gaviria responded "Yes, your Honor." Id. at 14. After reviewing the remaining essential terms of the plea agreement, Gaviria reaffirmed that he was pleading guilty to Count Five of the indictment, and the court accepted the plea.

The United States Probation Office then prepared a presentence investigation report ("PSI"), recommending a base offense level of 18, combining the level 8 set forth in § 2S1.1(a)(2) with a 10-level increase under § 2B1.1(b)(1)(F) based on the $120,000 to $200,000 value of the laundered funds. The PSI also included a two-level enhancement under § 2S1.1(b)(2)(B) because the offense of conviction was 18 U.S.C. § 1956, and a six-level increase under § 2S1.1(b)(1)(A) and (B)(i) because Gaviria knew or believed the laundered funds were drug proceeds. The PSI did not include a reduction under § 3E1.1 for acceptance of responsibility and thus resulted in a total offense level of 26.

Because Gaviria had no criminal-history points, the probation officer assigned a criminal history category of I. Based on these calculations, the probation officer found that the applicable guideline range was a term of imprisonment of 63 to 78 months. Gaviria objected, inter alia, to the probation officer's application of the six-level enhancement under § 2S1.1(b)(1) for knowing or believing the laundered money to be drug proceeds and the denial of an acceptance-of-responsibility reduction under § 3E1.1, and asserted that he should be held accountable only for the $50,000 amount of laundered funds to which he pleaded guilty.

Prior to sentencing, Gaviria filed an acceptance-of-responsibility statement, acknowledging that he knowingly laundered $50,000 in order to conceal and disguise its nature or source. Gaviria, however, did not identify the specific illegal activity from which the funds purportedly were derived or otherwise indicate his belief that the funds were drug proceeds.

At the first sentencing hearing, Gaviria reiterated his objection to the § 2S1.1(b)(1) enhancement, arguing that he never knew that the money he laundered was drug proceeds. He referred to the written transcripts of his meetings with the CI and asserted that the CI constantly baited him with comments that the funds were drug-related and that, although he responded that he would launder the funds, he also stated that he did not want to get involved with drugs or otherwise

6

know if the funds were drug-related. The government responded that these conversations established that Gaviria was "willfully ignorant" to the fact the funds were drug-related. R3 at 6. Gaviria claimed that, just because the CI was portraying a drug dealer, the laundered funds could have been proceeds from other specified unlawful activity, such as interstate commerce theft. The court indicated that it agreed with the government that Gaviria exhibited willful ignorance, but proposed allowing Gaviria to withdraw his plea. Gaviria stated that he did not want to withdraw his plea "because this element, whether or not it's drug proceeds, is a sentencing issue and not an element of the offense." Id. at 11. Under oath, Gaviria then testified that the CI told him that the funds were drug-related two days after he "had already agreed to launder the $110,000 that I laundered." Id. at 19. Gaviria added that he felt compelled to finish the 5 August 2002 transaction despite knowing the funds were drug-related, and thereafter did not launder any more drug money. After the government further questioned Gaviria, the court ordered a full evidentiary hearing on the issue.

Prior to the hearing, Gaviria filed an amended acceptance-of-responsibility statement, asserting that he "was a willing participant in Money Laundering in the amount of 110,000.00 dollars, which I believed was from an illegal activity." R1-132, Amended Statement at 1. Gaviria, however, did not acknowledge that he

knew or believed the funds were drug-related at the time he agreed to launder the funds, and added that, once he understood the money was derived from drug proceeds, he stopped laundering funds.

On 12 July 2004, Gaviria also filed a motion to be sentenced pursuant to the U.S. Supreme Court's intervening decision in Blakely, arguing that the district court could not constitutionally apply guideline enhancements based on his knowledge that the funds were drug-related or a laundered-money amount greater than that to which he admitted, because those facts were neither admitted by him in his guilty plea or proved to a jury beyond a reasonable doubt. Gaviria contended that, if his sentence was based solely on the facts that he admitted, he would receive a total offense level of 13, resulting in a guideline range of 12 to 18 months of imprisonment. Id. at 2, 7. The government responded to Gaviria's motion, arguing, inter alia, that Blakely was not implicated because Gaviria admitted to the facts supporting the § 2S1.1(b)(1) enhancement for knowing the funds were drug proceeds by (1) pleading guilty to Count Five of the indictment, which specifically charged that Gaviria knew or believed the funds were drug-related; and (2) admitting during his plea colloquy to the government's factual proffer, which contained the statement that Gaviria "'received $50,000 which he actually was told were drug proceeds.'" R1-140 at 1 (citation omitted). The

8

government also argued that <u>Blakely</u> did not apply to the Federal Sentencing Guidelines.

At the second sentencing hearing, the district court commented that it had reviewed Gaviria's plea colloquy and concluded that Gaviria had admitted that he knowingly laundered drug proceeds by (1) pleading guilty to Count Five, which specifically included that fact, and (2) agreeing to the government's factual proffer during the plea hearing that the laundered funds were represented to Gaviria as drug proceeds. The government asserted that, to avoid any potential impact under <u>Blakely</u> as to the amount of funds laundered, Gaviria should be held responsible only for the $110,000 that he both admitted under oath at the first sentencing hearing and conceded in his amended acceptance-of-responsibility statement. Gaviria then requested an opportunity to call the case agents to testify regarding whether he knew the funds were drug proceeds. The court denied the request, stating that "Blakely says I can't have an evidentiary hearing," but then asked whether Gaviria wanted to withdraw his plea and proceed to trial on all charges. R4 at 8-9. When Gaviria indicated that he was willing to go to trial solely to contest whether he knew the funds were drug-related, the court noted that it did not "believe that Blakely was designed to present a window of opportunity for agile defendants to leap through to reduce their sentence exposure." <u>Id.</u> at 9. The

9

court added that <u>Blakely</u> only required juries to decide disputed facts, not admitted facts. The court then recounted the plea hearing discussion of the government's factual proffer and reiterated its belief that Gaviria had admitted to knowing the funds were drug-related. Gaviria emphasized that the parties had specifically excluded any acknowledgment of that fact from the written plea agreement.

After finding that Gaviria admitted to knowing the funds were drug-related, the court again asked if Gaviria wished to withdraw his plea, and Gaviria answered affirmatively. The government opposed the request, arguing that Gaviria could not withdraw his plea based solely on his imminent sentence. The court then denied Gaviria's request to withdraw his plea, acknowledging that Gaviria's request was based only on the court's sentencing finding on the § 2S1.1(b)(1) issue. The court commented "that there has to be some finality," but agreed to consider Gaviria's admission that he was told the money was drug proceeds and his statement that he did not want to launder drug proceeds in the sentencing. <u>Id.</u> at 15. The district judge remarked that

> [A]lthough if push came to shove I might say that the guidelines are just advisory to me. The truth of the matter is, I do find them helpful. . . . in uniformity and many other ways. And I will sentence him in accordance with the guidelines that were in effect.
> . . .
> I have a responsibility to make a fair and just sentence. A fair and just sentence has a lot of aspects to it. But one of them is that I need

10

to consider the circumstances around the offense, whether they be helpful or harmful.

. . .

I think if he admits it in a credible way that it's something that I can consider. And I think I need to consider those things. I think that judges have to have the discretion.

. . .

I think both of [Gaviria's admissions that he laundered $110,000 and $50,000 which he knew was drug money] are different admissions. Both of which I can use for purposes of sentencing.

. . .

Those are the attendant circumstances which I think I can consider for purposes of sentencing. Now I cannot consider the other money that was charged but not proven or not admitted. And that is, I'm prepared to sentence at that level.

Id. at 15-19.

Following the district court's comments, the government suggested that, if the sentencing guidelines were thrown out, the district court could sentence Gaviria to the maximum statutory sentence of 30 years. The district court responded that he "could do that if [he] wanted to. I don't choose to do that." Id. The court overruled Gaviria's objection to the probation officer's recommendation of a denial of a § 3E1.1 reduction and noted that Gaviria had not fully accepted responsibility for his offense conduct by contesting the fact of whether he knew the funds were drug proceeds. Gaviria argued that the court was being inconsistent by finding as fact that he had admitted that the funds were drug proceeds, while also denying an acceptance-of-responsibility reduction because he

11

later contested that fact at sentencing. The court responded that Gaviria "cannot come in here and challenge his admission and claim acceptance of responsibility. It's kind of like killing your parents and claiming to be an orphan. It doesn't work that way." Id. at 21. Finally, the court found that Gaviria's total offense level should be reduced from the PSI's total level of 26 to 24, based on only an 8-level increase under § 2B1.1(b)(1)(E) for the lower $110,000 laundered-money amount, resulting in an imprisonment guideline range of 51 to 63 months. After Gaviria was provided an opportunity to speak, the court sentenced Gaviria to 51 months of imprisonment and 3 years of supervised release. Gaviria timely appealed.

## II. DISCUSSION

A. Whether the district court violated Blakely and Booker by applying a six-level enhancement for knowingly laundering drug proceeds

First, Gaviria argues on appeal that the district court violated Blakely by applying a six-level enhancement under § 2S1.1(b)(1) for knowing that the laundered funds were drug proceeds because the facts supporting that enhancement were disputed and were not decided by a jury beyond a reasonable doubt. He maintains that Blakely, implicitly if not explicitly, precluded federal courts from sentencing defendants for uncharged relevant conduct or even applying most Sentencing Guideline enhancements. Gaviria contends that he

12

never stipulated to the fact that he knew the laundered funds were drug proceeds and never consented to judicial factfinding. Gaviria asserts that the district court's reliance on the fact that he pleaded guilty to Count Five, which explicitly charged knowledge that the funds were drug-related, is misplaced because the specific unlawful activity is not an element of a § 1956 offense and he pleaded guilty only to the essential elements of the offense, not to the additional fact that the laundered funds were drug proceeds. He reasons that the district court never specifically questioned him regarding this fact, and initially ordered an evidentiary hearing, to which the government did not object, to resolve the dispute before changing its mind and finding that he had admitted the fact during his plea hearing.

Because Gaviria timely raised his constitutional objection in the district court, we review the constitutional issue de novo and will reverse or remand only for harmful error. United States v. Anderson, 289 F.3d 1321, 1325, 1326 (11th Cir. 2002); United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). "A constitutional error . . . is harmless beyond a reasonable doubt . . . [if] it is clear . . .that the error complained of did not contribute to the sentence obtained." Id. (internal quotation and citation omitted). The government bears the burden of

showing that an error is harmless and did not affect the substantial rights of the defendant.  Id. at 948-49.

In Booker, the Supreme Court held that there are two kinds of sentencing errors: (1) constitutional and (2) statutory.  United States v. Dacus, 408 F.3d 686, 688 (11th Cir. 2005) (per curiam).  A Sixth Amendment constitutional error occurs "where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury."  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, _ U.S. _, _ S. Ct. _ (Jun 20,  2005).  There is no constitutional error where a defendant's sentence is enhanced based on facts to which he admitted.  United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).  Statutory "error exists when the district court misapplies the Guidelines by considering them as binding as opposed to advisory."  Id. at 1331.

In this case, however, there is no Booker constitutional error.  First, despite Gaviria's assertions to the contrary, the transcript of the Federal Rule Criminal Procedure 11 plea colloquy clearly shows that Gaviria admitted that he knew the funds he laundered were drug-related.  In its initial factual proffer, the government asserted that the CI had specifically informed Gaviria in advance that "he was to launder drug proceeds" and that Gaviria "laundered [the money] with the belief

14

that they were actually narcotics proceeds." R2 at 12. Gaviria objected, stating that "I have a different opinion whether that can be proven. But given the — I understand if that were to be proven that would be the basis." Id. After Gaviria's counsel clarified that "[t]here was one issue" that the government's proffer might preclude Gaviria from arguing at sentencing, the government made a second proffer, reiterating that Gaviria agreed to launder $50,000 that "he actually was told were drug proceeds." Id. at 13-14. The court again asked Gaviria if he agreed that the government could prove those facts beyond a reasonable doubt if the case went to trial, and Gaviria answered in the affirmative. Gaviria then reaffirmed that he was pleading guilty to Count Five of the indictment, and the court accepted the plea. In light of the detailed colloquy at Gaviria's Rule 11 hearing, as well Gaviria's guilty plea to the plain language of Count Five of the indictment, which specifically alleged that he laundered funds he knew or believed to be drug proceeds, the district court correctly found as a matter of fact at the second sentencing hearing that Gaviria had admitted to knowingly laundering drug proceeds, not simply that the laundered funds were derived from unspecified illegal activity. Because Guevara admitted that he knowingly laundered drug proceeds, the district court's application of § 2S1.1(b)(1) to increase his sentence did not violate the Sixth Amendment at all. See R2 at 11. Likewise, Gaviria's

15

related contention that the district court violated <u>Booker</u> because the sentence-enhancing facts were not proved to a jury beyond a reasonable doubt is meritless because a stipulated fact is equivalent to a jury finding on that issue. <u>See</u> <u>United States v. Sanchez</u>, 269 F.3d 1250, 1271 n.40 (11th Cir. 2001) (en banc).

As the government concedes, the district court erred, however, by sentencing Booker under a mandatory Guidelines scheme. <u>See</u> <u>Shelton</u>, 400 F.3d at 1330-31. The government then bears the difficult burden of showing that the sentencing error is harmless and did not contribute to the defendant's sentence. <u>See</u> <u>Paz</u>, 405 F.3d at 948.

The government cannot meet its burden. The error committed in sentencing Gaviria was not harmless beyond a reasonable doubt. We do not know what the district court would have done if it had applied the guidelines as advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a). A remand is therefore warranted to permit the district court to resentence Gaviria with consideration to the factors set forth in 18 U.S.C. § 3553(a).

B. <u>Whether the district court erred by denying a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1</u>

Next, Gaviria argues that the district court erred in denying him a three-level reduction for acceptance of responsibility under § 3E1.1. He contends that

16

the acceptance-of-responsibility statement that he submitted to the probation officer was full and accurate and not contested by the government. He asserts that he admitted to all the facts necessary for the government to convict him of money laundering, and only attempted to reserve his objection to the § 2S1.1(b)(1) enhancement for knowing that the laundered funds were drug proceeds. He maintains that the district court's finding that he admitted, but did not accept, the fact that he knew the funds were drug-related was simply a matter of semantics which obfuscates his admission that he was guilty of money laundering. Finally, he states that the fact that he disagreed with the specific crime from which the laundered funds were derived was irrelevant because it did not have any bearing on the final determination of his conviction.

"We review the district court's determination of acceptance of responsibility only for clear error." United States v. Singh, 291 F.3d 756, 764 (11th Cir. 2002) (internal quotation and citation omitted).[1] "A district court's conclusion that a defendant is not entitled to acceptance of responsibility will not be set aside unless

---

[1] In Booker, the Supreme Court excised 18 U.S.C. § 3742(e), which established standards of review on appeal. Booker, 543 U.S. at ___, 125 S. Ct. at 764. In post-Booker cases, we have continued to apply the well-established "clear error" standard of review to fact-based challenges to Sentencing Guideline calculations. See Rodriguez, 398 F.3d at 1296.

the facts in the record clearly establish that a defendant has accepted personal responsibility." Id. (internal punctuation and citation omitted).

Section 3E1.1 of the Sentencing Guidelines permits a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," and an additional one-level reduction if "the defendant . . . assisted authorities . . . by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for a trial . . . ." U.S.S.G. § 3E1.1 (a), (b). A district court is directed to consider such factors as the defendant's "truthfully admitting . . .or not falsely denying any additional relevant conduct" and "the timeliness of [his] conduct in manifesting the acceptance of responsibility." § 3E1.1, comment. (n.1). Although "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction, . . a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id. Entry of a guilty plea does not entitle a defendant to the reduction as a matter of right. § 3E1.1, comment. (n.3).

The district court did not clearly err in denying Gaviria a reduction under § 3E1.1. Although Gaviria pled guilty to one substantive count of money laundering, that plea alone did not automatically entitle him to the reduction. In

18

addition, Gaviria's contention that the district court engaged in semantics by finding that he had admitted to, but had not accepted, knowing that the laundered funds were drug proceeds, is unpersuasive. At the first sentencing hearing, Gaviria testified under oath that the CI only told him that the funds were drug-related two days after agreeing to launder the money, and that he felt compelled to finish the transaction despite knowing the source of the funds. This sworn testimony was inconsistent with his earlier admission during the Rule 11 plea colloquy that he had accepted the funds knowing they were drug proceeds, and inconsistent to language in his guilty plea regarding Count Five, which specifically charged that he knew or believed the funds to be drug-related. Although Gaviria was not required to admit that he knew the funds were drug-related in order to receive a reduction under § 3E1.1, his affirmative and repeated attempts to deny such knowledge for sentencing purposes evinces his lack of acceptance of responsibility for his offense conduct. His written plea agreement conditioned the government's obligation to recommend a § 3E1.1 reduction on his "full, accurate, and complete disclosure . . . of the circumstances surrounding the relevant offense conduct," not just the facts establishing a prima facie case of money laundering. R1-67 at 2-3. Because Gaviria never fully and openly

conceded that he committed his money-laundering offense knowing that the funds were drug proceeds, the district court properly denied a § 3E1.1 reduction.

**C.** <u>Whether the district court abused its discretion by denying Gaviria's motion to withdraw his guilty plea and proceed to trial</u>

Finally, Gaviria argues that the district court erred by denying his motion at the second sentencing hearing to withdraw his guilty plea. He states that he sought to withdraw his plea because of his misunderstanding that he could challenge at sentencing the application of the § 2S1.1(b)(1) enhancement for knowing the funds were drug-related without losing the benefit of an acceptance-of-responsibility reduction. Gaviria also asserts that the district court denied his motion without considering whether his stated reasons for withdrawing the plea were fair and just. He contends that his motion to withdraw was not based on an imposed sentence, which he acknowledges was precluded by the plea agreement, because no sentence had yet been imposed at the time he made the motion.

"We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion" and "will only reverse a district court's denial of a motion to withdraw if it is arbitrary and unreasonable." <u>United States v. Cesal</u>, 391 F.3d 1172, 1179 (11th Cir. 2004) (per curiam) (internal quotations and citation omitted), <u>cert. granted and judgment vacated on other grounds</u>, _ U.S. _, _

20

S. Ct. __ (Jun 6, 2005). "A defendant may withdraw a plea of guilty . . . before [the court] imposes sentence if: the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Although such a provision "is to be liberally construed," a defendant has "no absolute right to withdraw a guilty plea prior to imposition of a sentence" and the decision lies within the sound discretion of the district court. United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988). In reviewing whether the defendant's reason for withdrawal is "fair and just",

> the district court examines the totality of the circumstances, including: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; . . . (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea[,] . . . . [(5)] the defendant's admission of factual guilt . . . [(6)] and the timing of the motion to withdraw.

Cesal, 391 F.3d at 1179 (internal quotations and citation omitted).

Gaviria had the assistance of counsel throughout the district court proceedings. At the Rule 11 plea hearing, Gaviria affirmed under oath that he had discussed the charges and the case in general with counsel and was satisfied with his counsel's representation and advice. He has never claimed that his guilty plea was not knowing and voluntary or that he was factually innocent of the offense. Rather, he asserts that he should be permitted to withdraw his plea based on his

21

attorney's alleged misunderstanding regarding Gaviria's eligibility for an acceptance-of-responsibility reduction after he had contested the applicability of the § 2S1.1(b)(1) enhancement for knowingly laundering drug proceeds. This alleged misapprehension relates only to the district court's sentence and not to the knowing and voluntary nature of the plea itself. Gaviria indicated in both his written plea agreement and at the Rule 11 hearing that he understood the statutory maximum penalties he faced by pleading guilty, and that his sentence would be calculated under the Sentencing Guidelines. The district court reasonably concluded that judicial resources would not be preserved if Gaviria was allowed to withdraw his plea immediately prior to imposition of sentence, explaining "that there has to be some finality" to the plea. R4 at 15. The district court's reasoning regarding judicial resources is supported by the record of Gaviria's plea hearing and two sentencing hearings. For the same reasons, the district court properly, if implicitly, determined that allowing Gaviria to withdraw his guilty plea just before imposition of sentence would prejudice the government.

Gaviria fully understood the consequences of his plea and only moved to withdraw the plea after the district court had made its sentencing findings and was ready to impose the sentence. Allowing Gaviria to withdraw his plea after a detailed plea colloquy and two sentencing hearings would have wasted valuable

22

judicial resources and resulted in significant prejudice to the government. The district court did not abuse its discretion in denying Gaviria's motion to withdraw his plea.

## III. CONCLUSION

For the reasons stated above, we find that the district court did not err in denying Gaviria an acceptance-of-responsibility reduction, and did not abuse its discretion by denying Gaviria's motion to withdraw his guilty plea. We find that the district court erred by enhancing Gaviria's sentence under a mandatory guidelines system and this error was not harmless. Accordingly, we vacate Gaviria's sentence and remand for resentencing consistent with Booker.

**VACATED AND REMANDED.**